[No. 3920.   Decided September 3, 1901.]

M. H. YOUNG, *Respondent,* v. FRANK BORZONE *et ux.,*
                    *Appellants.*

APPEAL—BRIEFS—OMISSION OF FINDINGS—HOW CURED.

The supreme court rule (Rule 8, subd. 5), which requires
that, in all equity causes and actions at law tried by the court
without a jury, the party appealing shall print in his brief the
findings of fact, with exceptions thereto, and the requested
findings, with the exceptions, in case any error shall be based
thereon, is sufficiently complied with by the insertion of such
matters in the reply brief.

SAME—EXCEPTIONS TO FINDINGS—SUFFICIENCY.

An exception to findings of fact, specifying them by number,
is a sufficient compliance with the statutory requirement (Bal.
Code, § 5052) that a party excepting must specify the part or
parts excepted to.

SAME—SUPERSEDEAS BOND—SUFFICIENCY.

In computing the amount necessary for a supersedeas bond
on appeal by defendants, there should be excluded from the com-

putation the sum deposited by them in court by way of tender and subsequently adjudged and paid to plaintiff, and the supersedeas bond consequently need only be in double the amount of the recovery against them as that constitutes the real subject of controversy.

LABORER'S LIEN ON LAND BENEFITED BY STREET IMPROVEMENT—CONSTITUTIONALITY.

Bal. Code, § 5902, which gives a lien upon real property to any person who, at the request of the owner, clears, grades, fills in or otherwise improves any street or road in front of or adjoining the same for labor performed or materials furnished for such purpose, is not unconstitutional on the ground of depriving the owner of his property without due process of law.

SAME—LIEN NOTICE—SUFFICIENCY OF ALLEGATION OF EMPLOYMENT.

A lien notice which states that the lienor performed labor at the request of another is equivalent to saying that he was employed by the other, and is sufficient under Bal. Code, § 5904, which provides that the claim of lien shall state "the name of the person by whom the laborer was employed."

STREET IMPROVEMENTS—WORK DONE BY PRIVATE CONTRACT—INTERPRETATION.

Where a contract was made between abutting property owners and a contractor for the improvement of a certain street, "according to the plans and specifications of the city engineer," the fact that the specifications were drawn up on a printed form used by the city in advertising for proposals for the improvement of streets, would not constitute portions of such printed form, other than that providing for the working details, a part of the contract, and consequently the contractor would not be bound by provisions therein forbidding the assignment of his contract without the consent of the board of public works, and providing liquidated damages for failure to complete the work within a designated time.

SAME—COUNTERCLAIM FOR DAMAGES.

Where a contract for improving a street provided that waste material might be deposited on abutting property, as might be permitted by owners thereof, a property owner may counterclaim for damages when the waste was not deposited as directed by him, but was heaped up, together with stumps, in one pile on his property.

SAME — LIQUIDATED DAMAGES.

Although a contract for a street improvement provides for its completion by a given date, damages by reason of failure to

perform are not recoverable, in the absence of a provision for liquidated damages, or where no facts are pleaded and proved showing the accrual of injury, because of such failure.

SAME—METHOD OF PAYMENT—ALTERATION OF CONTRACT.

A contract for the improvement of a street which provided that each property owner was to pay "in proportion to his ownership and interest in the property abutting and proximate to said street" as the same shall be distributed by the city engineer, was not altered by the subsequent interlineation of the words "each party thereto to pay only such part of the total cost as his front footage has to the total frontage improved in said street."

SAME—COST—EXCESS PAYMENT BY ONE OWNER WILL NOT BENEFIT ANOTHER.

The fact that one abutting property owner by mistake paid more than his share of the cost of a street improvement would not inure to the benefit of other property owners liable for the cost of such improvement, and permit them to deduct a proportionate part of such excess payment from the assessments properly chargeable against them.

TENDER—EFFECT—HOW FAR ADMISSION OF CONTRACT SUED ON.

Where, in an action on contract, the defendant pleads and makes good in court a tender for a portion of the sum claimed by plaintiff, he thereby admits only that a contract of the general nature pleaded was entered into and the amount due thereon to the extent of the tender, but he is not precluded thereby from showing damages as an offset or counterclaim against the sum demanded by plaintiff, nor estopped from asserting that there were other provisions of the contract than those pleaded by plaintiff.

SAME—WHAT SHOULD BE INCLUDED—COST OF FILING LIEN NOTICE.

A tender made before the bringing of action for the enforcement of a lien need not include the cost of filing the lien notice, since it is only in the event of the lienor's prevailing in case of a suit that he is entitled to recover the cost of filing such notice.

Appeal from Superior Court, King County.—Hon. Boyd J. Tallman, Judge. ·Reversed.

*Frank P. Lewis* and *Horace Peter,* for appellants.

*Preston & Embree,* for respondent.

The opinion of the court was delivered by

WHITE, J.—This is a suit in equity to foreclose a lien on certain lots in the city of Seattle for grading a street in front of such lots. Respondent moves the court to strike from the record and files the brief of the appellants, on the ground that the findings of fact and conclusions of law requested by appellants are not printed in the brief of the appellants; and respondent further moves the court that, on granting the motion to strike the brief, the appeal be dismissed. The respondent further moves the court that the judgment of the lower court be affirmed, for the reason that the exceptions of appellants to the findings of fact and conclusions of law do not specifically point out the findings complained of as erroneous. Sub-division five of Rule 8 provides that in all equity causes and actions at law tried by the court without a jury the party appealing shall print in his brief the findings of fact, with the exceptions thereto, etc., and also such findings as the lower court was requested to make, with the refusal and exceptions in case any error or contention shall be based thereon. The opening brief of the appellants fails to comply with subdivision five of Rule 8. The reply brief, however, complies with the same. This provision of the rule is for the benefit of the court. No injury can result to the respondent from failure to comply with it. Respondent is advised by the record in the case and the assignment of errors as to the points that will be urged on the appeal for a reversal. The printing of the findings, etc., in the reply brief cures the omission. The last ground urged is not well taken. At the time of signing the findings, the record shows that the appellants took exceptions in the following form and manner, which were allowed by the court:

"The defendant in open court at the time the court signed the foregoing findings, except to each and every part of each and every of the foregoing findings of fact and conclusions of law, that is to say: To the 2d, 3d, 4th, 5th, 6th, 7th, 8th, 9th, 10th, 11th, 12th, 13th, 14th, and 15th findings, to the 1st and 2d conclusions of law,—which exceptions, and each of them, are allowed, and entered in the record in this action."

This was sufficient, under the rule laid down by this court in *Ranahan v. Gibbons*, 23 Wash. 255 (62 Pac. 773). The motions are therefore denied.

The respondent brought this action to foreclose a lien on certain lots of the appellants fronting on Roy street, in the city of Seattle, and to recover $185.05, secured by such lien for the grading of part of said street. At the instance and request of George Kinnear, an ordinance was passed by the city council of Seattle granting permission to Kinnear, defendant Frank Borzone, and three other persons named therein, to improve Roy street between Second avenue West and Kinnear Park, at their cost and expense, by grading and sidewalking said street under the direction of the city engineer. Under and pursuant to said ordinance the city engineer prepared plans of and specifications for said proposed improvement. These plans and specifications were partly in writing, and were set forth in a printed form used by the city of Seattle in advertising for proposals for the improvement of streets. Portions of the printed form were stricken out, the remaining portions contained many stipulations applicable to contracts made directly with the city, such as:

"Material necessarily wasted from the cutting shall be disposed of as the city engineer may direct, no extra allowance being made for hauling or disposing of the same unless the distance hauled exceeds one thousand (1,000) feet. One cent per cubic yard will be paid for every one

hundred (100) feet so hauled over and above one thousand (1,000) feet for public use."

"The contractor shall not assign or transfer the contract for this improvement or sublet any of the work embraced in it, without the written consent of the board of public works."

"The work embraced in the contract for this improvement shall be begun immediately after written notice so to do shall have been given to the contractor by the board of public works, and carried on regularly and uninterruptedly thereafter (unless the said board shall otherwise, in writing, specially direct) with such force as to secure its completion within ninety (90) days thereafter; the time of beginning, rate of progress, and time of completion being essential conditions of said contract. And if the contractor shall fail to complete the work by the time above specified, the sum of twenty dollars per day, for each and every day thereafter until such completion, shall be deducted from the moneys payable under said contract."

The words "ninety (90)" before "days" was inserted in a blank space left in the printed form. Under the head, "General Description of Work and Materials," is the following, all being in writing after the words "It shall consist of":

"The improvement therein described is authorized by Ordinance No. 4825 of the City of Seattle, and shall conform to the requirements thereof.

"It shall consist of clearing, grubbing, grading, parking, surfacing, sloping, constructing sidewalks, box drains, crossings and bulkhead in the portion of Roy street above described and the approaches thereto.

"The waste material from the excavation shall be deposited as follows: 1st. In Roy street where required for embankment in the district included in this improvement. 2d. In the projections of the Fifth and Fourth avenues West and in Third avenue West from Roy street south toward Mercer street, as directed by the city engi-

neer. Any clearing and grubbing necessary in any of the said avenues shall be done or paid for outside of this contract, by the owner or owners of property abutting thereon. 3d. On the property on the south side of Roy street as may be permitted by the owners thereof.

"The right to waste said surplus material shall be exercised in the order designated as above."

The following typewritten agreement was prepared in duplicate, and signed by the property owners and Hadfield & Roberts:

"An agreement made and entered into this 18th day of May, 1899, by and between Hadfield and Roberts, parties of the first part, and Geo. Kinnear, Violet E. Parker, Frank Borzone, John King, Helen Taylor, Ira Bronson, M. A. Parsons and D. F. Decater, the parties of the second part. Witnesseth:

"Said Hadfield and Roberts agree to clear, grub, sidewalk and otherwise improve Roy street from Second avenue West to the east side of Sixth avenue West or Clover street, according to the plans and specifications of the city engineer and under his directions, as follows, to-wit:

All clearing and grubbing in said street for $95.00.

Moving all earth, (18) eighteen cents per cubic yard.

Sidewalks, culverts and box drains, and bulkheads, including nails and spikes ($11.05) eleven dollars per M. feet, B. M.

"Upon the completion of said improvements and acceptance by the city engineer, said Geo. Kinnear, Violet E. Parker, Frank Borzone, John King, Helen Taylor, Ira Bronson, M. A. Parsons and F. D. Decater agree to pay to said Hadfield & Roberts as per prices above mentioned, each in proportion to his ownership and interest in the property abutting and proximate to said Roy street and in said grade district liable by city law to pay for said improvements on said street as the same shall be completed and distributed by the city engineer.

(Description of Property.)

[Here follows description of the property and opposite the same the name of the owner. One of the descrip-

tions being: West half of vacated Meadow street, and Block 23, G. Kinnear's Addition, opposite which was the name Frank Borzone.]

"Witness our hands and seals the day and year above written."

. . . . . . . . . . . . . . . (Seal.)      . . . . . . . . . . . . . . . (Seal.)
. . . . . . . . . . . . . . . (Seal.)      . . . . . . . . . . . . . . . (Seal.)

The reason for preparing this agreement in duplicate was that some parties lived at one place, and some at another. One copy was sent in one direction and one in another, for the signature of the owners. These two copies were introduced in evidence. The copy signed by the appellant Frank Borzone contains the following interlineation in writing after the description of the property: "Each party hereto to pay only such part of the total cost as his foot frontage bears to the total frontage improved in said street." The other copy signed by some of the owners, contains the following interlineation after the words "distributed by the city engineer": "To be completed September 1, 1899." The respondent pleaded that Frank Borzone and Louise Borzone were husband and wife; that they were the owners as community property of Lots 1, 2, 3, Block E, of Kinnear's Park Addition to the City of Seattle; that said lots are the same property described in the contract hereafter mentioned as Block 23 and the east half of Meadow street, in G. Kinnear's Addition, being replatted under such description after the date of such contract. These allegations are not denied in the answer. The respondent further pleads that on the 18th of May, 1899, one Hadfield & Roberts, copartners on the one part, and Geo. Kinnear and the others, mentioning them by name, who had signed the two duplicate agreements, including Frank Borzone, on the other part, entered into an agreement, partly written and partly

typewritten, for having a portion of Roy street, in Scattle, Washington, cleared, grubbed, graded, and having sidewalks, culverts, box drains, bulkheads built and con-structed thereon under the supervision of the office of the city engineer of the city of Seattle. The respondent sets forth in full the duplicate agreement we have referred to, without the interlineations we have pointed out, as the agreement made between the respondent and the appellants. He then avers that Hadfield & Roberts, by written assignment, assigned and transferred the contract to John Kahlberg; that Kahlberg duly performed the work and improvements and completed the same about the 10th day of April, 1900; that Frank Borzone and all others to said contract had actual knowledge of such assignment at the time of the assignment, and that Kahlberg was performing said agreement under such assignment and that they did severally and together with the city engineer of the city of Seattle direct said John Kahlberg in regard to the manner of performing said work and grading said street, "*and of disposing of and distributing the waste earth therefrom,*" and they and each of them, by their conduct and acts, gave the said Kahlberg reason to believe, and he did therefore believe, that they, including the said Borzone, accepted him as the person entitled to do said work. It is further alleged that the city engineer of Seattle did, according to the terms of the con-tract and the city laws, compute, distribute, and charge for on behalf of the said John Kahlberg against the property mentioned in said contract the amounts chargeable on each of said tracts, and that the amount so charged against the appellants' property was $185.05; that the above claim has been assigned to the respondent; that respondent made and filed the notice of lien, which notice is pleaded in full. There is also an allegation that $75 is a reasonable

attorney fee, etc.   The prayer is for judgment for $185.03
and costs, attorney's fee, etc., and a decree of foreclosure of
the lien, and a sale of the property to pay the same.   The
appellants, in their answer, specifically deny all these al-
legations of the complaint, "except that the city engineer
made some sort of assessment, and defendants have no
knowledge or information sufficient to form a belief."   As
a first affirmative defense, the defendants pleaded that the
contract made between Hadfield & Roberts and the defend-
ants and others, concerning the subject matter contained
the interlined words, "Each party hereto to pay only such
part of the total cost as his front footage bears to the total
frontage improved in said street," and the interlined
words, "To be completed September 1, 1899;" and also
that the contract included all matters mentioned in the
written form on which the city engineer set forth the
plans and specifications, including the clause against as-
signing and transferring the contract, including the ninety
day clause in which the work was to be completed, and the
stipulation for liquidated damages at the rate of twenty
dollars per day.   The transfer of the contract is alleged
to have been without the consent of the board of public
works, and without the knowledge or consent of the de-
fendants.   It is further alleged that the contract as pleaded
by the defendants was the only contract made with Had-
field & Roberts for the work on Roy street set forth in the
complaint, and that all the work performed in and about
Roy street set forth in the complaint was done under the
contract as pleaded by the defendants, and not otherwise.
It was further alleged that: "On the day said contract
was made and on the day said work thereunder was com-
menced, the defendant's said block of land was on the
south side of said Roy street, and said Hadfield & Roberts

and the said Kahlberg, and each of them, have neglected
and failed to complete said contract, in that they did not
deposit the surplus or waste material to the cast, south
and west of the dwelling on said block as agreed and di-
rected, but in violation of said contract and of defendants'
rights, did deposit and pile the same together with stumps
in one heap on said block and north of said dwelling, to
a height of several feet above the adjoining sidewalk on
the south side of said street, to the defendants' injury and
damage of two hundred dollars." As a second defense, de-
fendants pleaded that Hadfield & Roberts and Kahlberg
failed to complete said work in time and manner agreed,
and have not yet completed the same, to the defendants'
injury and damage in the sum of twenty dollars per day,
or a proportionate share thereof, as liquidated damages for
each and every day since the first day of September, 1899,
ninety days after the work was alleged to have been com-
menced. The third defense was that, if the work had been
completed as contracted for, the amount payable thereun-
der by the defendants would not exceed one hundred dol-
lars. The fourth defense was that Hadfield & Roberts
and Kahlberg had failed to complete the contract accord-
ing to the terms thereof, in that the grading and construc-
tion of the bulkhead at the northwest corner of the defend-
ants' land was so defectively and negligently done that
the bulkhead and the earth back thereof is giving way, to
the defendants' injury and damage in the sum of fifty dol-
lars. The fifth defense was that there was a defect of par-
ties, in that Hadfield & Roberts and Kahlberg were not
made parties. The sixth defense was that the plaintiff
knew of the contract, had it in his possession, knew that
the work had not been done in accordance therewith, and
that the work had not been done as alleged in the lien; that
prior to the commencement of the action, "the defendants

tendered unto and handed out to the plaintiff at his office in Seattle the sum of one hundred and forty dollars in gold coin of the United States, in full of all claims and demands arising under or growing out of said contract and the work done and the material furnished thereunder and in full of plaintiff's claims and demands against said defendants, which tender was without just cause peremptorily refused and rejected, and defendants now bring into court the identical money so tendered." The seventh defense is an attempt to plead mere conclusions of law; that is, that § 5902 of Ballinger's Code, under which the lien is claimed, is unconstitutional, in that by it a person is deprived of his property without due process of law.

The respondent, by way of reply, denies that the specifications prepared by the city engineer were any part of the contract, and reaffirms that the contract set forth in the complaint is the only contract, and he denies the allegations as to placing the earth on the lots, and the damages alleged. The respondent also denies the second, third, fourth, fifth and seventh affirmative defenses, and all facts except the tender alleged in the sixth affirmative defense.

There are fifteen assigned errors, but they may be grouped under four heads: First. Is the statute unconstitutional providing for liens on real property in favor of any person who, at the request of the owner improves a street in front of his property? Second. What are the papers that constitute the contract, what is the contract, and what is the amount due thereon? Third. The right to claim liquidated damages for the breach of the contract. Fourth. The right to counter-claim for damages under the pleadings for placing earth on the lots of the appellant. The statute under which the lien is claimed by respondent is as follows:

"Any person who, at the request of the owner of any real property, his agent, contractor or sub-contractor, clears, grades, fills in or otherwise improves the same, or any street or road in front of or adjoining the same, has a lien upon such real property for the labor performed, or the materials furnished for such purposes." Bal. Code, § 5902.

The grading of a street in front of property is an improvement of the property. Ordinarily, such work is done by the municipality, and in such cases a proportionate cost of the improvement according to benefits, under the local assessment plan, may be charged against the property. Where the individual owner sees fit to do the same work by permission of the city, it is none the less an improvement to the abutting property, and we see no reason why the lien given by the express words of the statute in such cases should not attach in the same manner and to the same extent as where the improvement is placed directly on the lot in place of appurtenant to it. Of course, if the work is done by the city under the local improvement plan, or under its general power, no lien will attach under the laws relating to the liens of mechanics and material men. But where the work is done under a contract made directly with the owner, the lien is given by statute. The mere fact that the improvement benefits the public as well as the owner is no reason for holding that the property improved shall not be subject to a lien for the cost of the improvement.

Under the typewritten paper, of date of May, 1899, signed by Hadfield & Roberts and the owners of the property abutting on Roy street, "Hadfield & Roberts agree to clear, grub, grade, sidewalk and otherwise improve Roy street." "All clearing and grubbing in said street for $95.00. moving all earth, (18) eighteen cents per cubic yard. Sidewalks, culverts and box drains and bulkheads, including

nails and spikes ($11.05) eleven dollars per M. feet, B. M." The things to be done, and for which pay was to be exacted, were clearing, grubbing, building sidewalks, culverts, box drains and bulkheads, and grading the street and moving the earth necessary to such grading. The typewritten paper says these things that we have enumerated were to be done "according to the plans and specifications of the city engineer and under his direction." The term "plans and specifications," here used, refers to the working details. There was no intention by the parties signing this paper to confer on the city engineer authority to fix the time in which the work was to be completed, or extra compensation for the work, or to prescribe a penalty for liquidated damages, or anything else, save working details and plans therefor. So far as the plans and working details are concerned, we think they became a part of the contract. One of the working details was that:

"The waste material from the excavation shall be deposited as follows: 1st. In Roy street where required for embankment in the district included in this improvement. Second. In the projections of Fifth and Fourth avenues West and in Third avenue West from Roy street south toward Mercer street, as directed by the city engineer. Any clearing and grubbing necessary in any of said avenues shall be done or paid for outside of this contract, by the owner or owners of property abutting thereon. 3d. On the property on the south side of Roy street, as may be permitted by the owners thereof.

"The right to waste said surplus material shall be exercised in the order designated as above."

The provisions in the paper prepared by the city engineer when preparing the plans and working details, that the contractor should not assign or transfer the contract without the consent of the board of public works, and if the contractor should fail to complete the work within

ninety days, the sum of twenty dollars per day for each and every day thereafter until completion should be deducted from the moneys payable under the contract, were not a part of the contract contemplated by the parties signing the typewritten paper, as they were not a necessary part of the plans and working details. This view is borne out by the testimony of Mr. Kinnear, who appears to have managed the business on the part of the property owners. The appellants claim that the two duplicate typewritten papers and the paper prepared by the city engineer were attached together, and, as thus attached, formed the contract. Mr. Kinnear testified that they were not attached to each other, but that all the papers were kept in one envelope, and that the paper prepared by the city engineer was not regarded as part of the contract. This testimony means that the paper as an entire thing was not a part of the contract. There is no attempt to show that the working details and plans were not a part of the contract. The agreement signed by the parties expressly provides that such plans were to be a part of the contract. So much of the paper drawn up by the city engineer as disclosed these plans and details was admissible as proof of such plans, and, when proven, such plans entered into, and by the express provisions of the agreement signed by the parties became a part of, the contract. The court, over the objection of the appellants, to which proper exception was taken, excluded the paper prepared by the city engineer, showing these plans, and that one of the details was that the waste material from the excavation of the street should be deposited on the property on the south side of Roy street, as might be permitted by the owner. The appellants sought by the first affirmative defense to show that this earth was not deposited as directed by the appellants, but that it was heaped up together with stumps

in one pile on the property, and that they were damaged
thereby in the sum of two hundred dollars. This matter
constitutes a counter-claim, and is pleaded as a defense un-
der § 4835, Bal. Code. Even if we are in error in
holding that the paper prepared by the city engineer was
admissible for any purpose, yet the facts pleaded consti-
tuted a counter-claim, for they grew out of the transaction
set forth in the complaint. The attempt was made to show
by the witnesses Borzone and Hughbanks, that Kahlberg
agreed to put the surplus earth on appellants' land on the
east, south and west sides of the dwelling house on said
land; that he failed to do so, and piled it up in one pile, as
alleged in the answer; and that the appellants were dam-
aged thereby in the sum of fifty dollars, and that it would
cost fifty dollars to spread it around upon the east, west
and south sides of the house. All this evidence was ex-
cluded, and the ruling of the court properly excepted to.
We think the evidence was proper. There being no facts
in the record from which this court can estimate the dam-
ages so claimed, the judgment of the court for this reason
must be reversed. It may be conceded that under the in-
terlineation in one of the typewritten agreements the work
was to be completed September 1, 1899, but no facts are
pleaded to show that any damages accrued to appellants
by reason of such failure. The second defense is an at-
tempt to claim liquidated damages at the rate of twenty
dollars per day. But we have held that the part of the
paper prepared by the city engineer providing for such
damages was not any part of the contract entered into by
appellants and Hadfield & Roberts.

The third defense amounts to no more than a denial.
As to the fourth defense, there is no evidence to support
the same and no exceptions as to the ruling of the court.
All parties necessary to the complete determination of the

action were parties to the same, and there is nothing to support the fifth defense. The seventh defense is a mere conclusion of law, and we have already disposed of the matters claimed as a defense adversely to the appellants.

The tender of one hundred forty dollars, as pleaded in the sixth defense, does not preclude the appellants from showing damages under the first defense, to the amount of $45.05, the balance claimed by the respondent. The tender simply admits that under a contract made by the appellants with Hadfield & Roberts, and assigned to Kahlberg, and by Kahlberg to the respondent, Kahlberg improved Roy street in the manner alleged in the complaint, and that for such work they are indebted to the respondent in the sum of $140. They continue the tender made before the action was commenced, and bring the money into court in connection with their special plea as to what the contract was, and in connection with their special defenses, and the tender simply admits that under the contract, as they plead it in connection with their defenses, there is but $140 due from them for the improvement of the street to the respondent. By such tender they admit some kind of a contract as alleged, and they cannot deny, after making such a tender, that any contract was made by them with Hadfield & Roberts for the improvement of the street, or that it was assigned to Kahlberg, and by him to respondent, or that the amount due thereon is one hundred forty dollars. *Hinds v. Cottle,* 143 Mass. 310 (9 N. E. 654); *Simpson v. Carson,* 11 Ore. 361 (8 Pac 325); *Cox v. Parry,* 1 Durnford & E. (Term R.), 464; *Spalding v. Vandercook,* 2 Wend. 431; *Davis v. Millaudon,* 87 Am. Dec. 517.

The method of the computation of assessment of cost of work, as stated in the duplicate typewritten agreement, was that each property owner, upon the completion of the

improvements, was to pay "in proportion to his ownership
and interest in the property abutting and proximate to said
Roy street, and in said grade district liable by city law to
pay for said improvements on said street as the same shall
be completed and distributed by the city engineer." George
Cotterill, the assistant city engineer, testified that the com-
putation of $185.05 as the amount due from the appellants
under the contract was the amount as ascertained by the
city law; that the computation was made on the front foot-
age plan; that identically the same result would be ob-
tained computing under the interlined words, "Each party
thereto to pay only such part of the total cost as his front
footage has to the total frontage improved in said street."
The addition of these words, then, in no way altered the
contract as originally drawn. After the contract was made,
and before the work was completed, Kinnear and the ap-
pellants replatted their land on Roy street, so that the
property owned at the completion of the work by the ap-
pellants was described as Lots 1, 2, 3, in Block E. of Kin-
near's Park Addition, and it is admitted by the pleadings
that this description covers the same property described
in the contract as Block 23 and the east half of Meadow
street in G. Kinnear's Addition.    The computation was
made on the basis of the frontage of said Lots 1, 2 and 3,
Block E, Kinnear's Park Addition.    We think the com-
putation on this basis was correct.    The computation was
to be made at the completion of the work on the property
then owned fronting on the street.    The testimony is to
the effect that the assessment, $185.05, as the amount the
appellants were to pay, was correct under the contract.
That a mistake was made and that Mr. Kinnear paid $175
more than his share. We cannot see how the mistake made
against Mr. Kinnear should inure to the benefit of the ap-
pellants.    Kinnear may have the right to recover back

the money paid by mistake. When the appellants ask to have $14.80 back, the proportion of the said $175 credited on the assessment of $185.05, they are asking for something not theirs by the contract. Under the contract they were to pay such part of the total cost as their front footage bore to the total frontage improved. The testimony shows that was $185.05. No error was committed in refusing to deduct the sum of $14.80 from said amount.

Objection was made to the lien notice. This notice states the time of commencement and cessation of performing the work and furnishing the material, the name (John Kahlberg) of the person who performed the labor and furnished the material, and that the same was at the request of Frank Borzone. It contains a description of the property charged with the lien sufficient for identification. It states the name of the reputed owner as Frank Borzone. It states the amount for which the lien is claimed as $185.05. It, in addition, gives a general description of the work done, and states the value of this work was $185.05. It states that John Kahlberg, by an assignment in writing, duly assigned the claim and his right to claim a lien to M. H. Young. The notice was properly verified. We think the notice a full compliance with § 5904, Bal. Code. The statement that one performed labor, etc., at the request of another is equivalent to saying that he was employed by the other. The evidence is sufficient in this case to show that the appellants knew that Kahlberg was doing this work as the assignee of Hadfield & Roberts; besides, the tender pleaded admits that fact. The law allows the assignment of such a contract as was made between the appellants and Hadfield & Roberts (§ 4835, Bal. Code); and when the assignee, with full knowledge of, and without objection from, the contracting parties, performs the labor contracted to be performed, he must be held, under

the liberal rule of construction which must prevail when construing the lien law, as having been employed to do the work or furnish the material.

The record shows that by order of the court the respondent drew down the $140 tendered. Under §4835, *supra,* the appellants could plead in defense the counter-claim set up in the first affirmative defense. The court erred in excluding testimony, as we have indicated in this opinion, as to the damages relative to placing the earth and stumps on the lots of the appellants, as claimed in the first affirmative defense. For that reason the judgment is reversed, with instructions to the court below to proceed with the cause so far as to ascertain such damages. If such damages are equal to or exceed $45.05, the defendants to recover costs; otherwise, the plaintiff to have a decree of foreclosure of his lien for the amount due him over $140, with costs, with such attorney's fees, not exceeding twenty-five dollars, as the court below may allow. Appellants to recover their costs on this appeal.

REAVIS, C. J., and ANDERS, DUNBAR, MOUNT, FULLERTON and HADLEY, JJ., concur.

## ON PETITION FOR REHEARING.

WHITE, J.—The respondent, in his petition for rehearing, calls our attention to the fact that at the time of the hearing of the appeal a motion which was not incorporated in the respondent's brief was made to dismiss the appeal because of the insufficiency of the bond of appeal and supersedeas. When the opinion in this case was written this motion was not found with the files, hence the matter suggested by the motion was overlooked, and not passed upon. The notice of appeal in this case is sufficient to identify the judgment appealed from. The judgment ap-

pealed from is the final judgment and decree signed by
the judge who tried the cause, and it is signed and entered
of record on the 23d day of March, 1901. The respondent,
by his complaint in this action, sought to recover from the
appellants $185.05 under a contract made with Hadfield &
Roberts and the appellants for clearing, grubbing, grading,
sidewalking and otherwise improving Roy street, in Seat-
tle. Before the action was brought the appellants tendered
to the respondent $140, as being all that was due the re-
spondent for the aforesaid work. The respondent refused
to accept the tender and brought suit for $185.05 as the
amount due him from appellants. The appellants, when
they filed their answer, pleaded the above tender, and paid
the $140 into court for the use of the respondent and in
full satisfaction of his claim. The findings of fact and
conclusions of law were filed in this case on the 23d day
of March, 1901, the day final judgment was signed and
entered. On the 15th of March, 1901, on motion of the
respondent, the court made an order directing the clerk of
the court to pay over to the respondent as of March 12,
1901, the day of the trial, the $140 tender deposited by
appellants. No objection was made by the appellants to
this order. In our previous opinion we stated that the
record showed that this money was drawn down by the
respondent. An examination of the final decree clearly
shows that we were correct in this statement. That de-
cree recites that the one hundred and forty dollars had been
ordered paid over to the respondent, and then follows the
judgment in the following language:

"It is hereby, by the court, ordered and adjudged that
the plaintiff do have and recover of and from the defend-
ants, Frank Borzone and Louise Borzone, the sum of forty-
five and 5-100 ($45.05) dollars *as the balance unpaid* on
the alleged lien of the plaintiff, and on the contract set

forth in plaintiff's complaint, and the further sum of seventy cents ($.70) paid by plaintiff for filing his notice of lien with the auditor of King County, Washington, and the further sum of fifty ($50) dollars as attorneys' fees for the attorneys for the plaintiff herein, together with costs and disbursements of this action, to be taxed herein."

The decree then establishes the lien on the lots, and forecloses the same, and orders a sale of the lots by the sheriff, etc. It is clear that the final judgment was but for $45.05 and attorneys' fees and costs. The supersedeas was to stay the execution of this judgment. The penalty of the bond was for $500. The condition was, " Now, therefore, if the said principal, Frank Borzone and Louise Borzone, shall pay to M. H. Young, the plaintiff above named, all costs and damages that shall be adjudged against defendants on the appeal or on the dismissal thereof, and shall satisfy and perform the judgment or order appealed from, in case it shall be affirmed, and any judgment or order which the supreme court may render, or order to be rendered, by said superior court, not exceeding in amount or value the above original judgment, then this obligation to be void; otherwise to remain in full force and effect." The record in this case fails to disclose the amount of the costs, other than the attorney fee and seventy cents for filing the lien. The judgment and costs, so far as disclosed, amount to $95.75. The object of a supersedeas bond is to secure to the respondent the judgment recovered by him. The respondent in this case had in his possession $140 of the sum found to be due him. He was absolutely secure in this amount, and no bond was necessary to secure it to him. For the balance, $45.05, he had a judgment, and a bond of $500 to secure the same. We think, therefore, that the bond was sufficient both as an appeal and supersedeas, and the motion should be denied.

One word more as to the tender. The pleadings **and** proofs of both, appellants and respondent, show that there was no dispute or controversy as to these facts, viz.: *that a contract was made with Hadfield and Roberts by the appellants for clearing, grubbing, grading, sidewalking and otherwise improving Roy street according to plans and specifications of the city engineer of Seattle, and under his direction and control, at and upon the following rates: Clearing and grubbing said street, $95.00; moving earth, 18 cents per cubic yard; sidewalk, etc., $11.05 per thousand feet, board measure,* and that this work had been done. For this work, before the action was brought, $140 was tendered by appellants to respondent. The dispute between the appellants and respondent raised by the pleadings was as to whether the work was to be finished by September 1, 1899, and as to whether certain plans and specifications prepared by the city engineer for the work, with certain provisions contained therein, were also part of the contract. This court has found that neither the respondent nor the appellants were correct in their contention as to the connection of these plans and specifications and the provisions therein contained with the contract. It is plain from the pleadings that the appellants sought to keep the tender for the work good that they had made before the action was brought, and sought also to give their version of the contract. This, we think, they had a right to do. There is nothing inconsistent in the tender with the principal provisions of the contract, which are not disputed or controverted by either party touching the grading, etc., of the street; and that it was to be done under the plans and specifications and direction of the city engineer at the prices heretofore set out. Under the circumstances of this case it would violate equity and good conscience, and be illiberal and narrow, to hold that, be-

cause the appellants kept good their tender, they are estopped from asserting that there were *other* provisions of the contract than those pleaded by the respondent. If the rule of law is as contended for by respondent, that a plea of tender admits the contract in its entirety, as pleaded by the plaintiff, as the true and only contract, then it would always be in the power of the plaintiff to prevent the defendant from keeping his tender good by pleading a contract in part, as in this case, or a different one from that actually made. Thus would the defendant be shut out from keeping his tender good, unless he was prepared to admit the contract was as pleaded by the plaintiff. The law aims to arrive at the truth and to permit its assertion, and pleadings are for this purpose, and no rule should be upheld which retards or prevents this end. We think a plea continuing a tender, made before the action was brought, under the facts as disclosed in this case, goes only to the extent of admitting that a contract of the general nature pleaded was entered into, not that the plaintiff has correctly pleaded the contract; and after such a tender and plea the defendant cannot deny *in toto* any contract under which he became obligated to pay the amount tendered. *Simpson v. Carson,* 11 Ore. 361 (8 Pac. 325.)

When the tender was made of $140 before the action was brought, there was no obligation on the part of the appellants to pay also for filing the lien notice. It is only in the event of a suit, and when the lienor prevails, that he is entitled to recover the costs of filing the lien notice. We see no reason for changing our views as expressed in the opinion heretofore filed. The petition for a rehearing is therefore denied.

REAVIS, C. J., and FULLERTON, DUNBAR and ANDERS, JJ., concur.