MEREDITH ET AL., RESPONDENTS, *v.* ROMAN ET AL., APPELLANTS.

(No. 3,382.)

(Submitted May 4, 1914. Decided May 16, 1914.)

[141 Pac. 643.]

*Contracts—Breach—Construction—Plans and Specifications—*
*Pleadings—Amendments—Trial—Continuance—Complaint—*
*Misjoinder of Parties and Causes of Action—Practice—Sub-*
*contracts—Evidence—Account-books—Counterclaim.*

Pleadings—Amendments—Leave of Court.
  1.  After a cause is at issue and has been set for trial, defendant may not file an amended answer as a matter of right under section 6588, Revised Codes, but must obtain permission of the trial court to do so, pursuant to the provisions of section 6589.

  [As to amendment to pleading on trial, see note in 5 Ann. Cas. 674. As to amendment to pleading as requiring new process, see note in Ann. Cas. 1913B, 831.]

Same.

2. Section 6579, Revised Codes, which confers upon district courts the power to adjust the rights of codefendants *inter sese,* does not permit the adjustment of such rights in a case in which their claims are wholly independent of, and not in any way connected with, those of plaintiff, nor give the defendants the right to file new or amended pleadings irrespective of the requirements of section 6589.

Same—Excusable Delay—Effect.

3. Delay in filing an amended answer, occasioned by negotiations looking to a settlement of a controversy, did not authorize its filing without permission of court after the expiration of the time within which an amended pleading may be filed as a matter of right.

Same—Striking Amended Pleading.

4. Where the trial court could properly have stricken an amended pleading as a whole because filed without leave of court, it did not commit error in striking portions of it.

Continuance—When to be Granted.

5. A continuance ought to be granted whenever the facts shown upon the application therefor would authorize the court, under section 6589, Revised Codes, to relieve a party from a judgment, order or other proceeding taken against him through his mistake, surprise or excusable neglect.

[As to absence of counsel as ground for continuance, see note in Ann. Cas. 1913C, 431.]

Same—Stipulation—What Does not Constitute.

6. Correspondence between opposing counsel examined and *held* not to have constituted a stipulation for the postponement of a trial, so as to have been binding upon respondent.

[As to validity and enforcement of oral stipulations, see note in Ann. Cas. 1913B, 153.]

Same—Denial—Harmless Error.

7. Denial of an application of a continuance on account of the absence of witnesses, if error, *held* harmless, where opposing counsel admitted that, if present, they would testify to the facts which the applicant stated in his affidavit for the postponement he expected to prove by them, and where it further appeared that they had no personal knowledge of the transaction at issue.

Misjoinder of Parties and Causes of Action—Objection—Practice.

8. The point that the complaint discloses a misjoinder of parties or that causes of action are improperly united may not be raised by objection to the introduction of evidence, but must be taken advantage of by special demurrer, else the right to object is waived.

Contracts—Character of Work—Evidence—Harmless Error.

9. Where the answer, in an action by a subcontractor to recover a balance due him, admitted that plaintiff had done the work in conformity with the plans and specifications furnished him, testimony of plaintiff that defendant's civil engineer had stated that the work was being done to his satisfaction, though not relevant to the issues, was nonprejudicial.

Same—Plans and Specifications—Subcontracts.

10. A stipulation, in a subcontract for the construction of a ditch, that the work was to be done in accordance with the plans and specifications in the original contract, does not have the effect of incorporating into the subcontract a provision contained in the original one empowering the owner to assume charge of the work if it should be

abandoned or unnecessarily delayed, so as to authorize the original contractor to do likewise.

Evidence—Books of Account—When Inadmissible.

11. Account-books *held* inadmissible where the person who had kept them was not called to identify them, and where no preliminary proof had been introduced to show that they had been correctly kept in the usual course of business, or that the entries were contemporaneous with the transactions to which they related.

Counterclaim—Must be Pleaded.

12. Where defendants had a counterclaim for supplies, *etc.*, furnished to plaintiffs, but failed to plead it, evidence touching the same was properly excluded.

*Appeal from District Court, Ravalli County; R. Lee McCulloch, Judge.*

ACTION by George Meredith and another against the Bitter Root Valley Irrigation Company, Nels Roman, and others. Judgment for the plaintiffs and defendants Roman and Bennett appeal from it and an order denying their motion for a new trial. Affirmed.

*Messrs. Galen & Mettler,* for Appellants, submitted a brief; *Mr. Albert J. Galen* argued the cause orally.

*Mr. Chas. N. Madeen,* for Respondents, submitted a brief and argued the cause orally.

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

The defendant Bitter Root Valley Irrigation Company, a corporation, hereafter referred to as "the company," at the time of the occurrences out of which this controversy arose, was the owner of a storage reservoir at Lake Como, in Ravalli county, together with the right of way for a canal and a canal in course of construction thereon, extending from the reservoir northward through Bitter Root Valley. The purpose for which the canal was being constructed was to convey water to the lands lying along its course belonging to the company, to irrigate them. On October 18, 1909, it entered into a contract with defendant Thomas J. White, under the terms of which the latter agreed to do all the work necessary to complete a portion

of the canal described in specifications and plans attached to the contract. The work was to be done in compliance with the specifications and plans, to the entire satisfaction of the company. The compensation to be paid was fixed at a stipulated price per cubic yard for excavation work, varying in amount according to the nature of material to be moved, per square yard for grubbing, and per acre for plowing, *etc.* All the work was to be completed on or before May 1, 1910. Among other things it was stipulated: "If the work to be done under this contract shall be abandoned, or if at any time the company shall be of the opinion that the said work is unnecessarily delayed  *  *  *  or  *  *  *  the contractor fails to show such progress in the execution of the work as will give reasonable grounds for anticipating the completion within the required time, the said company shall have the power to notify the contractor to discontinue all work or any part thereof under this contract  *  *  *  and the said company shall thereupon have the right, at its discretion, to contract with other parties for the delivery or completion of all or any part of the work left uncompleted by said contractor, or for the correction of the whole or any part of said work. In case the expense incurred by said company is less than would have been payable under this contract if the same had been completed by said contractor, then said contractor shall be entitled to receive the difference." On November 1, by contract with defendants Roman and Bennett, copartners, White sublet to them a portion of the work, including all that part of the canal between stations 2893 and 3083. On November 6 these defendants sublet to the plaintiffs that part of the work included between stations 2893 and 2999. The stations marked the sections of uniform length into which the whole line of canal was divided. In both of these latter contracts it was stipulated that the work covered by them should be completed on or before May 1, 1910, in conformity with the "specifications and plans" embodied in the contract of the company with White, to the entire satisfaction of the engineers of the defendant company. As the basis of compensation, the classification of ma-

terial moved was to be made by the engineers of the company. Neither of them contained any other reference to the White contract.

The complaint contains two causes of action and seeks recovery against all the defendants. In the first cause of action, after a recital of the facts above stated, it is alleged, that immediately after entering into the contract, the plaintiffs began the work which they had agreed to perform thereunder, and continued the same until its completion, except when delayed by the defendants; that, in consideration of the completion thereof and the fulfillment of all the terms and conditions of the contract by plaintiffs, the defendants became indebted to them in the sum of $1,678.85; and that no part of this amount has been paid except the sum of $801.35, leaving a balance due of $876.50. Then follow allegations to the effect that, within the time prescribed by the statute and in conformity with its requirements, plaintiffs filed with the clerk of Ravalli county their notice of claim of lien upon the reservoir, canal, right of way, *etc.,* of the company. The prayer demands that plaintiffs have judgment for the balance due, with costs; that the same be declared a lien upon the property of the company; and that the property be sold to satisfy the judgment in case the same shall not be satisfied by Roman and Bennett. At the trial the issues presented in connection with the second cause of action were resolved in favor of the defendants. It is therefore not necessary to state the nature of it or its purpose further than to say that it demanded damages for delay caused plaintiffs by interference by defendants with the prosecution of the work covered by the contract.

The action was commenced on October 5, 1910. The issues having been made up by answers by the defendants, the trial was set for October ——, 1911. Upon stipulation by counsel the setting was vacated. Thereafter the date of the trial was fixed for March 18, 1912. After the order fixing the date of trial, and on February 23, the defendants Roman and Bennett, without leave of court, filed and served upon counsel for plaintiffs a pleading which purports to be an amended answer, "cross-

complaint and counterclaim," for affirmative relief. In the portion of this pleading designated as an answer, it is alleged that these defendants are entitled to a credit of $1,582.15 upon the amount earned by the plaintiffs under their contract, instead of $801.50, as alleged in the complaint, leaving a balance due plaintiffs of $94.70. It is further alleged that the plaintiffs have fully and in all particulars performed all the terms, provisions and obligations of said contract on their part to be kept and performed, "save and except that it became necessary for these defendants to furnish to the said plaintiffs the use of their construction force at an agreed charge therefor of $780.80, which said sum is included in the above-named credit of $1,582.15." The portion of the answer designated cross-complaint and counterclaim contains allegations appropriate to charge the defendant company and White for a balance due Roman and Bennett for work done under their contract of $9,-767.71, and judgment is demanded against them for this amount. It is alleged that the work done by the plaintiffs, for which they seek to charge the defendants Roman and Bennett, was done under the several contracts heretofore referred to, and is a joint liability against these defendants and the company and White. It is further alleged that in order to determine justly and equitably the rights of the plaintiffs against Roman and Bennett, and in order to avoid circuity of action and a multiplicity of suits, it is essential that the rights of these defendants as against the company and White be finally determined and fully adjudicated in this action. On March 5, 1912, on motion of plaintiffs, the portion of the so-called cross-complaint and counterclaim, seeking to charge the company and White for the balance alleged to be due Roman and Bennett, were stricken out on the ground that these allegations were redundant and did not constitute a defense or counterclaim to either cause of action set forth in the complaint. Thereupon the plaintiffs filed a reply denying the allegations of the answer wherein Roman and Bennett claim an additional credit of $780.80 for furnishing to plaintiffs their construction force. On February 24, by leave of court the company filed an amended

answer putting in issue all the allegations in the complaint charging liability against it in favor of plaintiffs. On March 12, four days after the disposition of plaintiffs' motion, the company also filed its answer to the counterclaim and cross-complaint, including those portions which had been stricken out on plaintiffs' motion, tendering issue upon all the allegations charging liability to Roman and Bennett jointly with White, for the work done by them under their contract with the latter. It is alleged that on July 16, 1910, Roman and Bennett filed with the clerk of Ravalli county their notice of claim of lien for the balance due them from White, but that, by failing for more than one year to bring an action in the proper court to enforce their claim, they had waived their rights in the premises. It is admitted that a small balance is due from the company to White; but it is averred that the company is entitled to retain this amount pending the determination of an action brought by one Michael Tobin, and now pending, to establish against the property of the company a lien for work done by him under the contract between the company and White. There is a general denial of all the other allegations. The plaintiffs by reply deny all the affirmative allegations of this answer relating to their claim. What pleadings, if any, were filed by White, the record, which does not contain the entire judgment-roll, does not disclose, though he was represented by counsel at the trial. An application for a postponement of the trial on behalf of Roman and Bennett having been denied, counsel for plaintiffs dismissed the second cause of action as against the company and White. He announced also that "no personal judgment" was sought against either of them on the first cause of action, but that it would be prosecuted as against them solely for the purpose of establishing plaintiffs' claim to the lien. The plaintiff was awarded a verdict for the full amount of the balance alleged to be due, and judgment was entered declaring it a lien upon the property of the company, with the usual provisions for a foreclosure sale in case Roman and Bennett should not be able to satisfy it. No disposition seems to have been made of the issues joined be-

tween the defendants upon the allegations of the cross-complaint. The defendants Roman and Bennett have appealed from the judgment and an order denying their motion for a new trial.

1. The first contention made is that the court erred in striking out the portions of the cross-complaint and counterclaim referred to above. It is argued that the defendants had the [1] right to file the amended pleading, under section 6588 of the Revised Codes. This section has reference to amendments which may be made as of right, and not to those which may be made only by permission of the court. (*Holter Hardware Co.* v. *Ontario Min. Co.*, 24 Mont. 184, 61 Pac. 3.) By the express words of the section, such an amendment is permissible, as of right only "at any time before answer or demurrer filed, or twenty days after demurrer and before the trial of the issue of law thereon." After the issue of law is tried and determined and the issues of fact are made up, the amendment must be made by permission under section 6589, upon such terms as the court, under all the circumstances and in the exercise of a sound discretion, may deem proper. The sole issue presented by the pleadings at the time the so-called cross-complaint and counterclaim was filed was as to the amount due plaintiffs for the work done under their contract. Conceding, as counsel contend, that, under section 6579 of the Revised [2] Codes, the court ought in proper cases to determine the rights of the defendants *inter sese* when the proper demand is made in his answer by the defendant desiring such relief, this requirement does not in any way affect the rules relating to amendments, or give the parties the right to file new pleadings at pleasure, and thus change the issues after they are once made up and the cause is ready for trial. As we take it, this provision is nothing more than a declaration, in statutory form, of the familiar rule that a court of equity, when all the parties to a controversy are before it, will adjust the rights of all and leave nothing open for future litigation, if it can be helped. (16 Cyc. 107, 108.) We do not think it requires or permits the adjustment of the rights of defendants *inter sese* in any case

in which, as here, they are wholly independent of, and not in any way connected with, the rights of the plaintiff. Otherwise, in any case defendants, against whom a plaintiff seeks relief and who have controversies with each other of any character, may interplead and have them adjusted. Such a construction of it would tend to delay, rather than to facilitate, the administration of justice, and might operate as a serious and substantial detriment to plaintiff's rights. In any event, however broad may be its application, a party cannot complain that he has been prejudiced by a nonobservance of it by the court, when he has failed to invoke it at the proper time and in the proper way.

The case is not mended by the fact that, in resistance to the [3] motion, counsel for Roman and Bennett filed an affidavit alleging, as an excuse for not filing the amended pleading earlier, that negotiations had been pending between his clients and the company and White for a settlement. Delay, though entirely excusable, did not justify a change of the issues without permission of court. Inasmuch as the whole pleading [4] might properly have been stricken (*Weir* v. *Washoe H. & S. Co.*, 31 Nev. 528, 104 Pac. 19; *Worley* v. *Spreckels Bros. Com. Co.*, 163 Cal. 60, 124 Pac. 697), the court did not err in striking out the portions of it it did. Moreover, the issues upon the cross-complaint and counterclaim were apparently fully made up by the subsequent pleadings on the part of White and the company. So far as the record discloses, the way was thus left open to Roman and Bennett to litigate their claims with their codefendants. They do not appear to have offered to do so, for they tendered no evidence. The record discloses no ruling of the court with reference to their rights in the premises. For this reason, also, we do not think the court may be convicted of error.

2. It is earnestly contended that the court abused its discretion, to the prejudice of defendants, in denying the [5] application for a postponement of the trial. The grounds upon which the application was based, as disclosed by the affidavits

of counsel, were that a stipulation for a postponement had been made between them and counsel for plaintiffs a few days before the time fixed for the trial, the result of which was that neither the defendants nor their counsel, after discovering that the cause would be tried, could conveniently be present; that the defendant Bennett could not be present because of illness in his family; that defendant Roman resided so far away from the place of trial that he could not be notified in time to be present; and that both members of the firm of attorneys who represented these defendants, relying upon the stipulation, had arranged to go elsewhere, and therefore neither of them could be present. Counsel for plaintiffs presented counter-affidavits denying that any stipulation had been made. The statute (section 6729) authorizes the granting of a postponement on the ground of absence of material evidence which it is expected will be obtained, when it appears that the moving party has been diligent in his effort to obtain it. The court may require the moving party to set forth in his affidavit the evidence which he expects to obtain. If the adverse party then admits that such evidence would be given, and that it be considered as actually given or offered, subject to legal objection, the postponement must be denied. A postponement may be granted on other grounds than the absence of evidence. It is manifestly the intention of this provision to protect the court from imposition and to prevent unnecessary delay. It is also its purpose to secure litigants the opportunity to try their controversies on the merits. No general rule can be laid down which will include all the circumstances under which a postponement should be granted. It may safely be said, however, that whenever the facts shown upon the application would authorize the court, under section 6589, to relieve a party from a judgment, order, or other proceeding taken against him through his mistake, surprise, or excusable neglect, the postponement ought to be granted. (*Light* v. *Richardson,* 3 Cal. Unrep. 745, 31 Pac. 1123.)

On March 3, fifteen days after the date set for the trial, [6] Mr. Madeen, counsel for plaintiffs, who resides at Mis·

soula, wrote to Mr. Galen, one of counsel for Roman and Bennett, residing at Helena, that the plaintiff Meredith was suffering from a broken leg and would probably not be able to attend the trial, and that it might, on that account, be necessary for him to apply for a postponement. He inquired whether he could obtain a stipulation for a postponement in case Meredith could not be present, or must apply to the court upon a proper showing. The reply by Mr. Galen on March 7 was that the matter would be taken up with his clients to ascertain whether they would consent, and the result reported. This letter contained a request that Mr. Madeen would ascertain definitely, as soon as possible, whether Meredith could be present and inform Mr. Galen whether he would desire a postponement. On March 10 Mr. Madeen wrote that he would let Mr. Galen know his wishes as soon as he could hear from Meredith. On March 11 he again wrote, saying that he had not heard from Mr. Meredith, but would telegraph as soon as he gained information of him. On March 12 Mr. Galen wrote: "We will stipulate for continuance as requested." On March 13 Mr. Madeen, having heard from Meredith that he could be present, telegraphed Mr. Galen: "We will try Roman and Bennett case as set eighteenth." At that time Mr. Madeen had not any information from Mr. Galen that his clients would consent to a postponement or that they expected to apply for one, though in his letter written on March 12, which had not yet reached Mr. Madeen, Mr. Galen stated that inasmuch as Mr. Bennett had sickness in his family, and Mr. Roman could not be reached without great difficulty, there should be a postponement. It is apparent from this correspondence that no definite agreement was reached at any time upon which Mr. Galen was entitled to rely. Mr. Madeen's inquiry as to whether the matter could be arranged by stipulation, at best, went no further than to imply that he would ask for a stipulation in case he ascertained that Meredith could not be present and it would be agreeable to Mr. Galen. The fact that Mr. Galen later concluded that it was necessary for him to have a postponement did not justify his treatment of Mr. Madeen's inquiry as a

definite offer to stipulate and to accept it as such, so as to bind Mr. Madeen.

Let it be assumed, however, that Mr. Galen was misled into the belief that there would be a postponement until it was too late for him to communicate with Mr. Roman. It is disclosed [7] by the record that Mr. Galen and Mr. Bennett were both present throughout the trial, and that Mr. Bennett was called and testified. Furthermore, the affidavit for the postponement, which was made by Mr. Galen, set out fully the facts which he expected to prove by both of his clients. Mr. Madeen thereupon admitted that if they were present they would testify to them. The affidavit contained no showing of diligent effort to secure Roman's presence. This was indispensably necessary. (Rev. Codes, sec. 6729.) Finally, it conclusively appears from the testimony of Mr. Bennett that the work covered by his and Roman's contract with White was prosecuted and completed through the agency of two of their employees, Emerson and Bradley, while both defendants were in Wyoming engaged in other work, and that neither of them had any personal knowledge of the books of account or anything that transpired in connection with plaintiffs' contract or the work covered by it. Therefore, if it be conceded that defendants were *prima facie* entitled to a postponement upon the showing made, it is apparent that in the final event they suffered no prejudice. Hence they cannot now complain.

3 It is argued, that when plaintiffs dismissed the second cause of action as to the company and White, the complaint disclosed [8] upon its face a misjoinder of parties defendant and different causes of action improperly united, and that the court erred in overruling defendants' objection to the introduction of evidence. This contention is without merit. The defects in the complaint made apparent by the action of plaintiffs' counsel, if such they were, could not be made of avail to the defendants by general objection to the introduction of evidence. That there is a misjoinder of parties or that causes of action are improperly united are grounds of special demurrer. (Rev. Codes, sec. 6534.) Objection to a complaint

on either or both grounds must be taken by demurrer, or the right to object is waived. (Rev. Codes, sec. 6539; *Knatz* v. *Wise,* 16 Mont. 555, 41 Pac. 710; *Haupt* v. *Independent Tel. M. Co.,* 25 Mont. 122, 63 Pac. 1033; *Logan* v. *Billings & Northern R. Co.,* 40 Mont. 467, 107 Pac. 415.) As pointed out in the case last cited, *supra,* after the issues have been joined, the plaintiff is entitled to all the relief which the complaint authorizes the court to grant against any defendant upon whom the evidence fixes liability. If the defendants desired to object to the pleadings on the grounds now urged, they should have asked leave to withdraw their answer and to file a special demurrer.

4. During the prosecution of the work by the plaintiffs, one [9] A. E. Walsh was acting as engineer for the company. It was his duty to see that the work was done in conformity with the specifications and plans furnished by the company. During the course of his examination, the plaintiff Meredith stated that Mr. Walsh was present when the work was completed. He was then asked what Mr. Walsh said as to the character of the work. Counsel for defendants objected that any statement by Walsh was incompetent, because it did not appear that he was the agent of the defendants and authorized to speak for them. The objection was overruled, and the witness answered: "He said the work was being done to his satisfaction. He said it was a good piece of work that was done on the ditch." It is argued that this was error. The admission in the answer of defendants that plaintiffs had complied with all the terms and conditions of the contract, except that they had not given to defendants credit for the amount they were entitled to, included the admission that the work had been done in compliance with the specifications and plans. This being so, the evidence was not relevant to any issue in the case. Nevertheless its admission could not have wrought prejudice. (*Emerson* v. *Bigler,* 21 Mont. 200, 53 Pac. 621.) Furthermore, under the terms of plaintiffs' contract, the work was to be done to the satisfaction of the engineers of the company; therefore the objection was not well made.

5. The evidence introduced by the plaintiffs disclosed that during the month of April, 1910, Bradley having about completed the portion of the work not sublet to the plaintiffs and being anxious to move the crew in his charge to the state of Wyoming, where the defendants were engaged in work under a contract with other parties, over objection and protest by the plaintiffs, with a force of men and teams took charge of and completed the unfinished portion of plaintiffs' work. It was also disclosed, without substantial dispute, that the plaintiffs were provided with a sufficient force of their own to complete their work within the time fixed by the contract. The defendants did this upon the assumption that all the provisions of the White contract, quoted in the statement, were embodied in the two subcontracts, and that by virtue of them they had the authority, at any time they deemed it necessary, to assume charge of the unfinished portion of the work awarded to any subcontractor, and to complete it and charge the subcontractor with the expense incurred. The ground of this assumption is the stipulation in each of the subcontracts that the work was to be done in compliance with the specifications and plans attached to the White contract, and to the entire satisfaction of the engineers of the company. Proceeding upon this assumption, counsel for defendants offered to introduce the White contract and that of defendants, to justify their conduct in interfering with plaintiffs' contract, and evidence touching the amount expended by them in completing the work, in order to show that they were entitled to the additional credit claimed in their answer. The evidence was all excluded. The contention is made that this was error. We do not agree with counsel that the stipulation in the subcontracts embodied in them any of the terms and conditions found in the White contract, because they refer only to the specifications and plans attached to it and not to the contract itself. (*Young* v. *Borzone,* 26 Wash. 4, 66 Pac. 135, 421; *Moreing* v. *Weber,* 3 Cal. App. 14, 84 Pac. 220; *Cruthers* v. *Donahue,* 85 Conn. 629, Ann. Cas. 1913C, 221, 84 Atl. 323; *Beattie* v. *McMullen,* 80 Conn. 160, 67 Atl. 488.) Let it be assumed, however, that the contention

of counsel is correct. When we come to examine the White contract to find a provision justifying the conduct of defendants, we do not find any. The provision quoted in the statement, upon which the defendants rely exclusively, conferred authority to interfere expressly upon the company, and not upon the defendants. Furthermore, the right to interfere and assume control at any time was not absolute, but was made dependent upon the existence of certain conditions named; that is to say: "If the work   *   *   *   shall be abandoned; or if *   *   *   the company shall be of opinion that said work is unnecessarily delayed; or the contractor   *   *   *   fails to show such progress   *   *   *   as will give reasonable grounds for anticipating the completion within the required time." The company was made the judge as to the existence of the facts justifying its interference, but even it could not have interfered as did the defendants, and ignored the rights of the plaintiffs simply because it chose to do so. To justify such interference, it was indispensably necessary that the conditions existed which are referred to in the contract. This evidence was wholly irrelevant and was properly excluded.

The evidence offered to show the cost of the work done by defendants was also properly excluded, for two reasons: In the [11] first place, defendants relied exclusively upon their books of account showing the amounts expended for men and teams and their maintenance. It appeared that some time prior to the time the work was completed, and at that time, the books had been kept by Bradley. Bradley was not called to identify the books as those kept by him, nor was his absence from the trial accounted for. There was in fact no preliminary evidence tending to show that the books had been kept in the usual course of business, that the entries had been made contemporaneously with the transactions out of which the charges grew, or that they had been honestly and correctly kept. The defendant Bennett, in connection with whose testimony they were offered, testified in substance that he knew nothing of them, except that they had been delivered to him by Bradley after the work had been completed. This preliminary evidence

was necessary to render the books admissible.   (*Ryan* v. *Dunphy,* 4 Mont. 356, 47 Am. Rep. 355, 5 Pac. 324; 3 Jones on Evidence, sec. 573; 1 Greenleaf on Evidence, 16th ed., 120.)   In the second place, the answer admits that the plaintiffs did the [12] work according to the terms and conditions of the contract, except that defendants furnished to them their construction force at an agreed charge therefor of $780.80.   Clearly, if this was true, the defendants had a counterclaim against the plaintiffs for this amount, as for supplies or for anything else furnished them on account, and should have formulated their pleadings accordingly.

Other contentions made are not of sufficient importance to require special notice.

The judgment and order are affirmed.

*Affirmed.*

MR. JUSTICE HOLLOWAY and MR. JUSTICE SANNER concur.

Rehearing denied June 8, 1914.