[No. 11054. Department Two. June 10, 1913.]

THE STATE OF WASHINGTON, *on the Relation of J. M. Noble, Appellant*, v. HENRY L. BOWLBY *et al., State Highway Board, Respondents.*[1]

CONTRACTS—CONDITIONS—SPECIFICATIONS. Conditions in specifications attached to a contract declaring that the contract is made subject thereto,.are part of the contract, where they were understood by the parties at the time of entering into the contract.

HIGHWAYS—CONSTRUCTION—CONTRACTS—UMPIRE—INTEREST. The fact that the state highway commissioner as such official was one of the parties to a contract for state road construction, does not preclude the parties from agreeing that he shall act as umpire in the matter of any dispute as to the meaning of any provision of the contract.

ARBITRATION AND AWARD—DECISION—INTEREST OF UMPIRE. An award by the state highway commissioner, named as an arbitrator in a state road contract, will not be set aside because of his official interest, where there is no showing that he acted arbitrarily or capriciously.

[1]Reported in 132 Pac. 723.

Appeal from a judgment of the superior court for Thurston county, Mitchell, J., entered October 10, 1912, upon findings in favor of the defendants, in mandamus to secure a warrant in payment for state road construction.  Affirmed.

*S. P. Domer*, for appellant.

*The Attorney General* and *R. E. Campbell, Assistant*, for respondents.

Morris, J.—Relator sued out this writ of mandamus, praying for a decree directing respondents to issue a voucher for a warrant in the amount claimed by him to be due upon his contract for the part construction of state road No. 2 in Stevens county.  Issue being joined, the matter was submitted to the court below, resulting in a finding that the relator was entitled to receive the sum of $1,243.31, and decree was entered accordingly, from which relator, claiming such sum is inadequate, appeals.

The dispute between relator and the state highway board is one relating to the proper classification of work and material, and what should be included in the term "surfacing," as used in the contract; appellant contending that this term includes the removal of rock from the surface of the road and the leveling to the proper grade, while respondents contend that the proper definition is to be found in the finding of the lower court that "surfacing will be done where grading is unnecessary, and shall consist of plowing and harrowing the full width of the roadbed, throwing out all roots and other perishable matter and crowning the roadbed with a road-grader."  The lower court has not only found that the term "surfacing, as contemplated by this contract, is correctly defined in its finding, but in addition found that, as so interpreted, it was fully explained to and understood by relator prior to the time he entered upon the work, and that he at all times fully knew just what would be allowed him under this classification, and that, from time to time during the progress of the work, relator was informed by the resident engineer

in charge of the work what this classification would include. There is evidence to sustain these findings, and they must be sustained and accepted as the facts in the case. It is, also, we think, clear that the work now claimed by relator which should be classified as surfacing has been allowed for, and payment accepted by relator under different classifications. We find from his last estimate voucher for this work, made out subsequent to the time when the division engineer had suggested a reclassification, and some time after work on the contract had ceased, that the amount claimed as then due him was less than the sum found due by the court, and less than the amount the state highway commissioner subsequently determined as his due. Attached to the contract were the specifications providing for the manner of doing the work, and another paper labeled "general stipulations." This last paper contained the following provisions:

"It is further expressly agreed between the parties to the contract that the contract is made subject to the following conditions and stipulations: (a) In case of ambiguity of expression in the specifications or doubt as to the correct interpretation of the same, the matter shall be submitted to the highway commissioner, whose decision shall be final. . . . (1) It is mutually agreed between the parties to the contract, that, to prevent all disputes and misunderstandings between them in relation to any of the stipulations contained in these specifications, or their performance by either of said parties, that the state highway commissioner shall be an umpire to decide all matters arising or growing out of said contract between them."

Relator contends that these "general stipulations" were no part of his contract and that he is not bound by them. In this contention we think he is in error and that his own testimony shows that, at the time he entered into the contract, he understood these general stipulations formed a part of his contract relative to the matter of its performance and were as much a part of his contract as any other of its conceded provisions.

Under these stipulations the state highway commissioner, as such umpire, had ample power to determine the proper classification of the work in case of any dispute or controversy, or to interpret the proper meaning to be given to any provision of the contract. Relator contends that the highway commissioner could not act as an umpire in a matter in which he was one of the disputing parties. It is clear, we think, that the parties to this contract contemplated that somewhere there should be an authority whose determination as to these disputed matters should be final, and it is equally clear that such authority should be the state highway commissioner. The mere fact that the highway commissioner was a state official, and as such officially was one of the parties to the contract representing the state, is not, of itself, in the absence of any showing of fraud or misconduct, sufficient to render his selection as umpire nugatory. We have held that partiality, interest, or relationship on the part of an arbitrator is of itself no ground for setting aside an award, when with full knowledge of the relationship the arbitrator is agreed upon and the dispute submitted to him. *Glover v. Rochester-German Ins. Co.*, 11 Wash. 143, 39 Pac. 380; *Lidgerwood Park Water Works Co. v. Spokane*, 19 Wash. 365, 53 Pac. 352; *Skagit County v. Trowbridge*, 25 Wash. 140, 64 Pac. 901; *Zindorf Const. Co. v. Western American Co.*, 27 Wash. 31, 67 Pac. 374; and such we think is the general rule. 2 Am. & Eng. Ency. Law (2d ed.), 637. The rule of waiver is as binding under these circumstances as any other to which it might be applied. There is no showing here that the highway commissioner in making his awards to relator acted arbitrarily or capriciously, or was guilty of any misconduct that should disturb his award, and until there is some such showing , the award made by him must be accepted.

The decree of the lower court finds ample support in the facts submitted to it and the law upon which it is based, and for these reasons it is affirmed.

Crow, C. J., Fullerton, Main, and Ellis, JJ., concur.