[No. 13101.   Department One.   March 7, 1916.]

FIDELITY & DEPOSIT COMPANY, OF MARYLAND *et al.*, *Respondents*, v. NORTHWESTERN NATIONAL BANK OF BELLINGHAM, *Appellant.*[1]

PRINCIPAL AND SURETY—BOND ON PUBLIC WORKS—RIGHTS OF CREDITORS—ADVANCE TO CONTRACTOR—APPLICATION OF PAYMENTS. Where a surety company on the bond of a subcontractor on highway work was obliged to pay debts and take over the work, and afterwards earned money in the performance of the uncompleted work, before a bank that had made advances to the subcontractor can claim reimbursement from the surety company, it must show that all the money advanced was used by the subcontractor in that particular work; and it has no claim on the money earned by the surety where a substantial part of the advances were used in the payment of salaries of officers and other items not entering into the performance of the work.

SAME—RIGHTS OF CREDITORS — ASSIGNMENTS BY CONTRACTOR—RESCINDING. An assignment directing the state and county auditors to pay all money due or that will become due from time to time for work performed on certain highway work by a subcontractor may be rescinded by the principal contractor after the subcontractor defaulted and gave notice that it could not perform the contract.

SAME — RIGHTS OF CREDITORS — ADVANCES TO CONTRACTOR — PAYMENTS—FAILURE TO APPLY. Where a bank advanced money to a subcontractor on highway work, taking notes therefor, and received warrants on the work for more than sufficient to pay the notes, but failed to apply the same thereto and allowed the same to be checked out on general account upon other contracts, it cannot claim reimbursement from the surety on the bond of the subcontractor after the latter's default.

Appeal from a judgment of the superior court for Thurston county, Mitchell, J., entered May 18, 1915, upon find-

[1]Reported in 155 Pac. 743.

ings in favor of the plaintiffs, in an action to determine conflicting claims to a deposit in court, tried to the court.   Affirmed.

*Black & Black* and *Craven & Greene*, for appellant.

*Trefethen, Grinstead & Laube*, for respondent Fidelity & Deposit Company.

*Kellogg & Thompson*, for respondent Sauset.

MOUNT, J.—This action is for a preference right to a fund of $5,799.40, paid into the registry of the court by the state.   The plaintiff, Fidelity & Deposit Company of Maryland, and the defendants K. Sauset and the Northwestern National Bank of Bellingham each claim a preferential right to the fund.   The other defendants disavowed any claim to the fund, and were therefore dismissed.   Upon a trial of the issues, the court awarded the plaintiff and the defendant K. Sauset the right to the whole fund, and denied the Northwestern National Bank of Bellingham any relief, and taxed the costs to the bank.   This appeal was taken by the bank from that judgment.

The facts are as follows:   In May, 1913, Whatcom county entered into a contract with the respondent Sauset for the construction of permanent highway No. 3 in Whatcom county, which highway is commonly known as the Northeast Diagonal Road.   This contract required Mr. Sauset to pay all laborers and materialmen for work done under the contract.   Thereafter, on May 24, Mr. Sauset, with the consent of Whatcom county, sublet the entire contract to the American Contracting Company.   This last contract, among other things, provided that warrants drawn by the county and the state in payment for the work were to be indorsed and delivered by Mr. Sauset to the American Contracting Company.   Mr. Sauset required a bond of indemnity in the sum of $20,000 for the faithful performance of this contract. The Fidelity & Deposit Company of Maryland, the plaintiff

and respondent herein, became surety for the subcontractor. The application for the bond provided that the surety should be subrogated to the rights of the American Contracting Company, and contained an assignment of all the money to become due to the subcontractor under the contract. This bond was executed in May, 1913.

Thereafter on September 9, 1913, the subcontractor applied to the Northwestern National Bank of Bellingham for a loan of money for the purpose of performing the contract. The bank refused to loan the money to the American Contracting Company without an assignment of the moneys to become due from the state and county under the contract. Thereupon the American Contracting Company signed an order addressed to the state auditor and the auditor of Whatcom county, as follows:

"Will you kindly deliver all money now due us or that will become due from time to time for work performed on the Northeast Diagonal Road, to the Northwestern National Bank of Bellingham, Wash., and allow them to receipt for the same."

This order was also signed by Mr. Sauset, the original contractor. At the time this order was given, the bank knew that the subcontractor had given a bond to the contractor, but had not examined the contract with reference to the assignment to the surety company of the moneys to become due under the contract. Thereupon the bank advanced moneys upon promissory notes of the American Contracting Company, as follows: October 8, 1913, $1,500; October 21, 1913, $1,000; and November 1, 1913, $1,000. The American Contracting Company, at the time this money was borrowed upon these notes, was engaged in the performance of other contracts. This money was deposited to the general account of the American Contracting Company, and checks were drawn against the account indiscriminately.

After the order above referred to was drawn, Mr. Sauset indorsed checks which were delivered to the bank amounting

to $9,249.14, of which sum the bank credited upon the notes the sum of $284.29. On December 30, 1913, the American Contracting Company gave notice of its inability to complete the contract. The surety company, upon the demand of the original contractor, Mr. Sauset, thereupon paid the laborers and materialmen the sum of $13,770.64, which the American Contracting Company was liable for on account of work done under the contract. The work was still incomplete. The bonding company then entered into a contract with Mr. Sauset to finish the work as an employee of the bonding company, and this was done for an agreed price of $2,879.97.

At the time the subcontractor notified the surety company of its inability to complete the contract and the surety company was required to take over the work and complete the contract, Mr. Sauset and the surety company notified the bank and the state and county auditors that the order theretofore given by the American Contracting Company and Mr. Sauset, and hereinabove quoted, was rescinded. After the work was completed, the state paid the balance due upon the completion of the work into the registry of the court. The bonding company, Mr. Sauset, and the bank are now each claiming a preference to this money.

The trial court, among other things, found:

"That the evidence does not show that the said advancement of $3,500, or any definite portion thereof, was disbursed in payment of claims for labor or material on the Northeast Diagonal Road; that it does clearly appear from such evidence that a considerable portion of this account was used to pay the proper salaries of those persons who were officers of the subcontractor, premium on the subcontractor's bond, interest charges to the bank, office rent, automobile tires, and supplies, and shipping charges."

The appellant relies principally upon the case of *Puget Sound State Bank v. Gallucci*, 82 Wash. 445, 144 Pac. 698, where we held the surety company liable on its bond for the repayment of money loaned by a bank to a contractor upon

public work, where the money was used by the contractor in the construction of the work. In that case we said:

"It will be noticed, however, that the bonds not only secure these things in the language of the statute; but the bonds are also conditioned that Gallucci '*shall faithfully perform all of the provisions of said contract;*' and that one of the provisions of the contracts is that he '*will pay all just debts, dues and demands incurred in the performance of said work,*' which provision is unqualified by any other language of the contracts. We cannot escape the conclusion that this provision of the contracts includes debts incurred by Gallucci of the nature here involved; that is that he incurred such debts to the bank 'in the performance of said work,' though this conclusion might not be correct were the bank's rights rested alone upon the language of the bonds and statute."

We are satisfied that, under the holding in that case, before the Northwestern National Bank could claim any reimbursement from the surety company, it was necessary to show that all the money so advanced was used by the contractor in the performance of this particular work. The trial court found, as we have seen above, that a very substantial portion of the money advanced by the bank was not used in the performance of the work, but was used in payment of salaries of officers of the corporation, and other items which do not enter into the performance of the work at all. In this case the subcontractor failed to perform his contract. The surety company, as surety for the subcontractor, took over the work, paid a large amount of money upon outstanding claims for work and material furnished, and then sublet the contract to the original contractor; and the original contractor thereupon finished the work. The money which was subsequently paid into the court came as a result of the surety company finishing the contract. Under these circumstances, it seems plain that the surety company is entitled to the money which it afterwards earned in the performance of that uncompleted work.

Much stress is laid by the appellant upon the order or assignment which we have above quoted; and it is strenuously argued that this assignment was binding upon Mr. Sauset and upon the surety company because it consented to Mr. Sauset indorsing the warrants, and to the bank collecting them. But it is plain from the language of the assignment itself that only the warrants or money *earned by the subcontractor* upon the work was assigned, because it recites:

"Will you kindly deliver all money now due us or that will become due from time to time for work performed on the Northeast Diagonal Road."

This, of course, can only mean that the assignment was for moneys which were to become due to the American Contracting Company, the subcontractor, which that company earned in the performance of the work. When that company failed to perform the contract, and notified the original contractor and the surety that it was unable to perform its contract, clearly we think Mr. Sauset had a right to rescind the order that was given. Furthermore, the trial court found that the bank had received in warrants more than $9,000, and had applied upon the notes only the sum of $284.29. What became of the rest of this money does not appear. It was the duty of the bank to credit this money upon the notes. The surety company was clearly not liable for money that was put into a general account and checked out upon other contracts, or for work that was not performed upon the Northeast Diagonal Road under that contract.

It is true there is some indefinite testimony in the record that a part of this money for these warrants was paid for labor and materials in the construction of the Northeast Diagonal Road, but it is not shown what amount was so paid; and it is not shown that the amount of money which the bank received upon these warrants, issued by the state and the county and indorsed by Mr. Sauset, was not sufficient to pay for all the labor and material which the subcontractor used in the construction of this particular road, and also to pay

these notes held by the bank.  Before the bank would be entitled to a preference to the fund in court, or to relief against the surety upon the subcontractor's bond, it must show, under the *Gallucci* case, that the money which it advanced was used exclusively in this particular improvement.  The surety company, so far as this record shows, was not liable for any work performed by the subcontractor upon other contracts. It was surety only upon this particular contract.  We are satisfied, therefore, that the moneys earned by the surety company and by Mr. Sauset in the completion of the work, which was paid into court, were rightfully ordered by the trial court to be paid to the surety and Mr. Sauset in preference to the bank.

Several other questions are argued in the briefs; but from what we have already said, we think it follows that the judgment must be affirmed, and no further notice of other questions is necessary.

MORRIS, C. J., CHADWICK, ELLIS, and FULLERTON, JJ., concur.