1004

**W. H. PUTEGNAT CO., Inc., et al. v. FIDEL-ITY & DEPOSIT CO. OF MARYLAND.**

**No. 1176—5499.**

Commission of Appeals of Texas, Section B.
June 28, 1930.

Wells & Richards, of Brownsville, for plaintiffs in error.

Seabury, George & Taylor, of Brownsville, for Huitt.

H. B. Galbraith and B. N. Goodrich, both of Brownsville, for Frontier Lumber Co.

Albert B. Hall, of Dallas, for defendant in error.

SHORT, P. J.

R. H. Milton, doing business under the name of Milton Construction Company, made a contract in writing with W. H. Huitt, the owner of a certain town lot, by the terms of which R. H. Milton obligated himself to construct a dwelling on the said lot, it being the homestead of Huitt and wife, for the sum of $6,200, in accordance with certain plans and specifications, Milton to furnish all labor and material necessary to build said dwelling and also a bond, with approved security. The defendant in error, Fidelity & Deposit Company of Maryland, with its principal office at Baltimore in the state of Maryland, as surety, executed the bond, as surety, required by the contract, between Huitt and Milton, in the sum of $3,000, conditioned that Milton "shall indemnify the owner against any and all losses of damage directly arising, by reason of the failure of the principal to faithfully perform said contract," provided that (1) "the owner shall faithfully and punctually perform all the terms and conditions of said contract to be performed by the owner"; (2) "that if the principal shall abandon said contract or be lawfully compelled, by reason of a default, to cease operations thereof, the surety shall have the right, at its option, to complete said contract or to sub-let completion thereof." The contractor, before the building was completed, abandoned the enterprise, and the surety, having been duly notified of this fact, through its office at Baltimore, notified the owner that it would not avail itself of its option to complete the contract. However, the trial court found as a fact that it did complete the building, and the Court of Civil Appeals adopted this finding of fact as its own. After the building had been completed and the owner had paid to the defendant in error the balance of the money in his hands, which was due by reason of his contract with the contractor, the plaintiffs in error, who had furnished the contractor certain material, which the contractor had used in the construction of the building, brought this suit to recover the value of the material furnished, making the owners, the contractor, and the defendant in error parties defendant. Upon a trial before the court, without the intervention of a jury, and after R. H. Milton, who had not been served except by publication, was dismissed from the case, and upon a showing that the owner had complied with his part of the contract, and that the property was the homestead of the owner and wife, judgment was rendered in favor of the owner and against the plaintiffs in error, and against the defendant in error and in favor of the several original plaintiffs, the original suit having been consolidated by agreement of the parties. Upon appeal to the Court of Civil Appeals by the defendant in error, this judgment was reversed and judgment rendered that the original plaintiffs take nothing, whereupon writ of error was granted to the plaintiffs in error. A more detailed statement of the nature of the case is made in the opinion of the Court of Civil Appeals, 15 S. W.(2d) 729.

The plaintiffs in error contend that, where a surety takes over the completion of any work, upon the default of the original contractor, and accepts the balance due the said contractor, under the original contract, the surety assumes the liability of said original contract, inasmuch as the surety has been subrogated to all the benefits accruing to the contractor. They also contend that the uncontradicted evidence is that the defendant in error promised to pay for the material furnished by the plaintiffs in error, but the Court of Civil Appeals evidently found that no such promise, legally binding upon the defendant in error, was made, and, from a reading of the testimony on this subject, we have reached the conclusion that the defendant in error is not bound by any promises, such as the testimony shows were made, so as to make the defendant in error legally responsible, and have concluded that, if the defendant in error can be made liable, upon any theory, the liability must arise under the first contention made by the plaintiffs in error, as stated by us above.

The Court of Civil Appeals, in its opinion, refused to hold the defendant in error liable upon the ground that the record shows the owner was not personally liable for any debts of the contractor, and, inasmuch as the bond was given to indemnify the owner against loss or damage, by reason of the failure of the contractor "to faithfully perform said contract," and there having accrued no damage to the owner, the defendant in error was not bound to pay any damages. In other words, the bonds were given to indemnify the owner and not to pay the creditors of the contractor, generally, for all debts due by him.

The bond recites the fact that the contractor had entered into a certain contract with the owner, giving the date, and specifying the location of the building to be erected. A copy of this contract seems to have been attached to the bond and made a part of it, and, according to its terms, the contractor obligated himself to furnish all labor and material to build the dwelling in consideration that the owner would pay the contract price. The owner paid the contract price, and, while the contractor furnished to the owner the material, represented by the demands of the plaintiffs in error, he did not pay for the same. Evidently it was the intention of the parties to the contract that the contractor should procure, at his own expense, this material. The Court of Civil Appeals found, as a fact, that the defendant in error did exercise this right.

██ The first paragraph in the bond executed by the defendant in error clearly imposed an *obligation* upon the defendant in error to pay to the owner any loss or damage resulting from the failure of the contractor to comply with the provisions of his contract made with the owner. Since the testimony establishes the fact beyond contradiction that the owner did not suffer any loss or damage, on account of the failure of the contractor to comply with the terms of his contract, no liability was established against the defendant in error in favor of the owner.

Following the paragraph we have discussed is this recitation: "This bond is executed and accepted upon the following express conditions precedent," and then the conditions heretofore stated, together with others not necessary to state, are specified to the effect (1) that the owner shall perform his part of the contract with the contractor; and (2) that should the principal abandon the contract the surety shall have the right, in its option, to complete said contract or to sublet the completion of it. This part of the bond, executed by the defendant in error, secured to it a *right*, evidently considered a valuable one, as the bond expressly states that the *obligation* of the defendant in error to the owner should depend for its validity upon the fact that this right was reserved to be exercised, in case the defendant in error so elected.

The testimony shows, without dispute, that at the time the defendant in error elected to exercise this right, to complete the contract, after the contractor had abandoned the contract, it had information that the contractor had, in pursuance of his obligation with the owner, procured from the plaintiffs in error the material necessary to construct the building, but that the contractor had not paid for this material. The testimony further shows, without dispute, that this material was actually used by the contractor in the furtherance of his efforts to perform his part of the contract.

██ The contractor having voluntarily and without justification abandoned his contract, he ceased to have any dominion over the enterprise or the right to the possession or control over the building in process of construction. By the terms of its bond, when the contractor had abandoned his contract made with the owner, the defendant in error had the right, which it did in fact exercise, to assume dominion over the enterprise and to demand possession and control over the building then in process of erection, and, according to the testimony, proceeded to carry out the terms of the contract, which the contractor had made with the owner, appropriating the material in the condition in which it was found, delivered by the plaintiffs in error to the contractor and used by him in erecting the building, and receiving from the owner, when the building had been completed, the balance of the contract price remaining in the owner's hands, which the owner had agreed to pay for the building in its completed state. The testimony further shows that the person found by the trial court and by the Court of Civil Appeals to have acted with authority for the defendant in exercising the right of election reserved in the bond to the defendant in error informed plaintiffs in error that they were protected by the terms of the bond, and that their claims would be paid by the defendant in error, thus indicating the construction placed upon the bond by this authorized agent, who assumed to make the election and to complete the contract in accordance with the terms of the bond.

██ This contract, the right to complete which the defendant in error exercised, has mutual and dependent stipulations. It is stipulated that the contractor should construct, at his own expense, a certain dwelling in a certain location. Another stipulation is that the owner of the dwelling should pay therefor a certain sum of money when completed, according to certain plans and specifications. Each of these stipulations is dependent the one upon the other. By the express terms of the contract, it is apparent that the parties thereto contemplated that, as and when the contractor performed the acts he agreed to perform, the owner of the dwelling in process of erection should likewise do the things he agreed to do. The contract being a mutual and dependent one, when the defendant in error demanded and received from the owner what the contractor would have been entitled to demand and receive from him had the latter completed the contract, as the defendant in error had done, the law implied upon the part of the defendant either an assertion that all things had been done which the contract required to be done or a promise that it would do everything which the contract had required to be done in order that it should be completed. Where one accepts the benefits of a contract, he must assume its burdens.

██ The terms of that contract obligated the contractor to erect a one-story spanish type dwelling at Olmito, Tex., in accordance with the plans and specifications attached, in a good workmanship manner and to the best of his ability, and to furnish all labor and material to build said dwelling, in consideration of which the owner agreed to pay to the contractor $6,200 in full payment of said work, labor, and material used and expended in the construction of the building.

In 9 C. J. p. 857, par. 195, it is said: "Where the bond so provides, the surety may,

on default by the builder, elect to complete the contract and to stand on the terms of the bond, or voluntarily to pay any damages resulting from the builder's default; and where he thus assumes the defaulted contract he is entitled to the benefits of the contract from the time of the builder's default, together with any sum that may be due the builder at the time the default is declared, and he also becomes subject to all the builder's liabilities, and hence he is entitled to no lien for his work where the contractor is not entitled to one by reason of the contract not being recorded." Watterson v. Owens River Canal Co., 25 Cal. App. 247, 143 P. 90; American Bonding Co. v. Regents of University, 11 Idaho, 163, 81 P. 604; Atlantic & N. C. Ry. Co. v. Atlantic & N. C. Co., 147 N. C. 368, 61 S. E. 185, 23 L. R. A. (N. S.) 223, 125 Am. St. Rep. 550, 15 Ann. Cas. 363; Ausplund v. Ætna Indemnity Co., 47 Or. 10, 81 P. 577, 82 P. 12; Younce v. Broad Road Lbr. Co., 148 N. C. 34, 61 S. E. 624; Kirby Lbr. Co. v. R. L. Lbr. Co. (Tex. Civ. App.) 279 S. W. 546; Gollnick v. Fry (Tex. Com. App.) 23 S.W.(2d) par. 2, p. 681.

When the owner notified the defendant in error that the contractor had made default, the record shows that it elected to complete the contract, thereby becoming entitled to all the benefits of the contract and assuming all its responsibilities. When the defendant in error reserved the right to make this election, and after he had exercised it, under the very conditions which it had previously prescribed, there was an assignment to it by virtue of the existence of the conditions set forth in the contract which had been made between the owner and the contractor. The contract having thus been assigned by the existence of the conditions and the election on the part of the defendant in error to complete the contract, the defendant in error became entitled to the benefits of the contract, and necessarily assumed its burdens. The owner discharged his obligations under the contract. The contractor failed to discharge his, whereupon the defendant in error exercised its right to complete the contract and to stand on the terms of the bond, which, as we have seen, was so written as to embrace within its terms the contract made between the owner and the contractor. The facts in this case show the elements of an assignment by the contractor to the defendant in error of the contract, with the consent of the owner of the building, whereby the defendant in error, upon its election to complete the contract, became entitled to all of its benefits and assumed all of its responsibilities.

We therefore recommend that the judgment of the Court of Civil Appeals be reversed and that of the district court affirmed.

CURETON, C. J.

Judgment of the Court of Civil Appeals reversed, and that of the district court affirmed, as recommended by the Commission of Appeals.