29267. PITTSBURGH PLATE GLASS COMPANY *v.* AMERICAN SURETY COMPANY OF NEW YORK.

DECIDED MARCH 7, 1942. REHEARING DENIED MARCH 27, 1942.

*William A. Fuller,* for plaintiff.

*Kennedy & Therrell, James A. Branch, Thomas B. Branch Jr.,* for defendant.

SUTTON, J. (After stating the foregoing facts.) The plaintiff entered into a contract with Henry C. Beck, trading as Central Contracting Company, to furnish certain glass, glazing, and glass block and install in buildings which he was constructing for the State Hospital Authority of Georgia at Milledgeville, Georgia, and for the Public Works Administration at Fort Benning, Georgia. According to the petition the work was done, the general contractor, Beck, secured the acceptance and approval of the architects and was paid, and he paid the plaintiff except as to a balance of $3657.26, to recover which suit was brought against the defendant surety, under the provisions of Code § 23-1708, on a bond executed by Beck as principal. The petition attaches as exhibits the relevant portion of the contract under which Beck operated and the subcontract into which he entered with the plaintiff, and the question here presented is whether or not, under the allegations of the petition as amended, the trial court erred in sustaining the defendant's general demurrers and in dismissing the petition.

While the subcontract refers to the plans and specifications mentioned in the contract under which Beck, the general contractor, operated, the plaintiff contends that such reference was merely for the purpose of showing the character, quality, sizes, etc., of the glass and glass block ordered from it by Beck, and that the general contract became a part of the subcontract only for such particular

and limited purpose. The defendant contends that the petition and exhibits show that the plaintiff undertook to do for the contractor, in respect to the materials ordered and in the installation thereof, what the contractor was obligated to do for the State Hospital Authority and the Public Works Administration in the construction of the specified buildings, that the plaintiff's contract with the general contractor was an entire one, and that it breached the contract by failing to clean and have clean, before final inspection, the glass it had installed and also to obtain from Robert & Company, architects and engineers, acceptance and approval of the work, and, therefore, was not entitled to recover. The plaintiff avers that its subcontract did not require that it clean the glass and that it properly declined to do so at the request of the general contractor, and that, though required originally to obtain from the architects and engineers acceptance and approval of its work, the general contractor waived its obligation by himself obtaining such acceptance and approval.

It appears from the petition that under the subcontract with Beck the plaintiff agreed to furnish specified materials and install the same in certain buildings being constructed by Beck at the Milledgeville State Hospital (as to which it is agreed by both parties that the alleged balance on account applies exclusively) "in strict accordance and compliance with the plans and specifications of Robert & Company, architects and engineers for the Milledgeville State Hospital," and that "all of the materials furnished under this order shall be subject to the approval of Robert & Company, architects and engineers, and is more specifically called for in the specifications under section 5, pages 1 to 14, inclusive, for the Milledgeville work; and also under section 22, pages 1 to 2, inclusive, for the Milledgeville work; and is more specifically called for in the specifications prepared by the War Department for Fort Benning, page 65. You are to furnish and secure the approval of the architects and engineers on all glass and glass block for Milledgeville, and you are to furnish and secure the approval of the construction quartermaster on all glass for Fort Benning. This order shall cover a complete job of glass and glazing for Milledgeville and Fort Benning, whether shown on the plans or called for in the specifications or in both." (Then followed statement of a lump sum to be paid for all work.) In section 22, item 1, of the

general contract, referred to in the subcontract, it was provided: "All glass required by the contract shall be furnished and installed complete. The glass shall be carefully cleaned, and any glass that has been broken, cracked, scratched, or otherwise damaged by work under this contract shall be replaced with new glass. All glass shall be clean and sound at the time of final inspection."

It is the general rule, as stated in 9 Am. Jur. 11, § 11: "It is generally held that where a building contract refers to the plans and specifications and so makes them a part of itself, the contract is to be construed as to its terms and scope together with the plans and specifications. The specifications are but the particulars or details of the plan, and the term 'plan' fairly embraces the specifications for the buildings. Where the plans and specifications are by express terms made a part of the contract, the terms of the plans and specifications will control with the same force as though incorporated in the very contract itself. Where, however, the plans and specifications are referred to in the contract for a particular specified purpose, such specifications can serve no other purpose than the one specified, and are foreign to the contract for all other purposes. In the absence of express provision in the contract, the specifications can neither restrict nor extend the scope of the contract to subjects other than those covered by the contract." While the subcontract did not by express terms make the general contract a part of itself, we think that the reference to the plans and specifications of the general contract, though not embracing all of the obligations of the general contractor, does not merely serve the limited purpose of requiring the furnishing and installing specified material, as contended by the plaintiff in error, but comprehends that such material and work, on final inspection, should have the approval of Robert & Company, the architects and engineers. It is manifest that no acceptance and approval could reasonably be expected if any of the glass, etc. should be found to be "broken, cracked, scratched, or otherwise damaged" or not cleaned; and the petition shows that after the initial installation of such material the work, because of acts of other subcontractors, was left in a condition which did not merit the approval of the architects and engineers; that the general contractor called upon the plaintiff to clean the glass so that such approval could be obtained, but that the plaintiff, conceiving that it had done in the first instance all that

was required of it, refused to put the glass in a condition meriting approval of the designated agency; that it became necessary for the general contractor to remedy this deficiency, and, having done so, to obtain the requisite approval. The subcontract did not merely call for the furnishing and installation of glass, etc., but required that the plaintiff furnish all necessary glass, etc., whether shown in the plans and specifications or not, that is, "a complete job," and as "more specifically called for" in the plans and specifications of the general contract. Under section 22, item 1, any glass called for would have to be glass which, at final inspection, was not found to be damaged or in need of cleaning, and we think that the plaintiff undertook to have such glass, at final inspection, in a condition warranting approval of the architects and engineers and to obtain that approval and acceptance of the work. It is shown, as above stated, that other subcontractors, plasterers, etc., rendered the original work of the plaintiff such that some replacement and cleaning became necessary for final approval and acceptance by the architects and engineers. The plaintiff, after due notice and request by the general contractor, refused to properly clean the glass. It became necessary, therefore, for the general contractor to do what the plaintiff was obligated to him to do, and in so doing he could not reasonably be said to have waived, as contended by the plaintiff in error, any duty resting upon the plaintiff. The contract was plainly an entire one. The petition shows that it was breached by the plaintiff in that it failed to clean the glass and to obtain from the designated architects and engineers the acceptance and approval of its work. Consequently, the plaintiff was not entitled to maintain an action on it against the general contractor or to bring the present suit against his surety on his bond. The trial court did not err in sustaining the defendant's general demurrers and in dismissing the petition as amended.

We have examined all of the authorities cited by both parties, both from the courts of this State and other jurisdictions, but forbear any general discussion as the present case is distinct on its facts, and the legal principles applicable are succinctly stated in the general rule announced in 9 Am. Jur. 11, § 11, hereinbefore quoted.

The above ruling makes unnecessary any discussion as to the plaintiff's assignment of error on its exceptions pendente lite.

*Judgment affirmed. Stephens, P. J., concurs.*

FELTON, J., dissenting. I think the reference in the subcontract to the plans and specifications had the effect of governing the subcontractor as respects matters which the subcontractor was obligated to do under the terms of the subcontract. I do not think the plans and specifications could enlarge the undertakings of the subcontractor. The question as to whether the subcontractor agreed or was bound to clean the windows and glass must be settled by an interpretation of the subcontract. The question is, what does "a complete job" mean? The reference in a general contract to plans and specifications is an entirely different thing from such a reference in a subcontract. A strong fact supporting this conclusion is that the provision in section 22 of the plans and specifications that all broken glass shall be replaced, etc., can not reasonably be said to obligate the subcontractor to replace it in any and all events, even if it was broken by the negligence of the contractor himself. Yet, if we interpret section 22 as part of the subcontract measuring the duties of the subcontractor, it necessarily must be held to be the undertaking of the subcontractor to replace all broken glass regardless of how it was broken. Further, I do not think that the subcontract required that the subcontractor obtain the approval of his work of installation. I think it means that the subcontractor was to have the glass approved before installation. I think it was the duty of the general contractor to obtain approval of the completed job.