GLOBE INDEMNITY COMPANY, Appellant, v. PETERSON–McCASLIN LUMBER COMPANY, a Nevada Corporation, and State of Nevada for the Use and Benefit of Peterson–McCaslin Lumber Company, a Nevada Corporation, Respondents.

No. 3936

November 15, 1956.                     303 P.2d 414.

*Vargas, Dillon & Bartlett* and *Alex A. Garroway,* of Reno, for Appellant.

*A. Dyer Jensen,* District Attorney, Washoe County, of Reno, for Respondents.

## OPINION

By the Court, MERRILL, C. J.:

This is an action brought by respondent lumber company against appellant indemnity company as surety upon a public works bond. From summary judgment in favor of the lumber company, rendered upon the pleadings, the indemnity company has taken this appeal. The sole question involved is as to the respective rights of the parties to that portion of the contract price retained by the State as security for completion of the work by the contractor. The lumber company asserts rights as an unpaid materialman. The indemnity company asserts rights by subrogation.

One Mills entered into a contract with the highway department of the State of Nevada for certain construction work. Pursuant to the provisions of secs. 5337–40 N.C.L. 1941, 1949 Supp. a bond was provided in the sum of $35,652, appellant indemnity company serving as surety thereon. Sec. 5337, N.C.L. 1949 Supp., with reference to the bond required, provides that ⅔ of the bond shall be conditioned upon full performance and ⅓ shall be conditioned upon payment of those supplying labor and materials. The bond was conditioned accordingly. The surety's limit of liability under the bond for unpaid bills for labor and material was thus $9,836.51.

Mills defaulted in performance. Sec. 5338, N.C.L. 1941 Supp., provides that in making progress payments ten percent shall be withheld until the work is satisfactorily completed and accepted by the State; that should it become necessary for the State to take over the contract for completion the amount withheld shall first be applied toward the cost of completion.

Upon Mills' default the State made demand upon the indemnity company that it complete performance pursuant to its obligation as surety. This the indemnity company did, expending (according to the allegations of its answer) more than the amount of the State's retent in such performance. The amount of the retent was then paid to it by the State.

At the time of Mills' default certain materialmen remained unpaid, among them being respondent lumber company. The total amount of unpaid bills was more than the surety's liability under the bond of $9,836.51. Payment of this amount, pro rata to the creditors, was tendered by the surety and such payment was rejected by the lumber company, which demanded payment in full. It contended that it had an equitable right to the retent to the extent of full payment of its bill, which right was superior to that of the surety.

Such was the holding of the trial court. In support of such holding respondent relies upon American Surety Company v. Westinghouse Manufacturing Company, 296 U.S. 133, 80 L.Ed. 105, 56 S.Ct. 9.

That case, as does the one before us, involved a dispute between the surety and unpaid job creditors as to their respective rights to the retent. (It thus differs from Union Indemnity Company v. Drumm, 57 Nev. 242, 252, 62 P.2d 698, 70 P.2d 767.) In the American Surety Company case, as here, although the surety had paid job creditors to the extent of its liability under the bond, the creditors' claims were not discharged in full. The Supreme Court held the surety not entitled to the retent. It stated [296 U.S. 133, 56 S.Ct. 11], "A surety who has undertaken to pay the creditors of the principal, though

not beyond a stated limit, may not share in the assets of the principal by reason of such payment until the debts thus partially protected have been satisfied in full. This is the rule where the right to a dividend has its basis in the principle of equitable subrogation. 'A surety liable only for part of the debt does not become subrogated to collateral or remedies available to the creditor unless he pays the whole debt or it is otherwise satisfied.' "

In that case, however, the contractor had completed performance. The surety's rights by subrogation arose solely by virtue of its partial payment of creditors' claims. The subrogation was solely to the right of the contractor to the retent which right was held subject to the contractor's duty to pay the creditors in full.

In the instant case the surety was compelled to complete performance. Its subrogation was not limited to the rights of the contractor. It was subrogated to the right of the State to apply the retent against the cost of completing performance. Prairie State National Bank v. U.S., 164 U.S. 227, 41 L.Ed. 412, 17 S.Ct. 142. As stated in Lacy v. Maryland Casualty Company, 4 Cir., 32 Fed.2d 48, 51, "If the surety, instead of performing the contract, elects to pay damages, it can be held for no more than the amount which the obligee is compelled to pay to complete the work over and above the amount which it has on hand at the time of the principal's default, for this is all the damage that the surety sustains. But when this happens the surety receives the benefit of the unpaid current estimates as well as the retained percentages. Equity, of course, will not place him in worse position where he performs the contract of the principal in accordance with his obligation than where he elects to respond in damages. * * * The right of the casualty company to subrogation entitled it to be substituted to the right which the highway commission might have asserted against these funds."

The surety's rights by subrogation were not, then, limited by any rights which the creditors might have asserted against the contractor. Its right to the retent is free from any claim thereto which might be asserted by respondent lumber company.

The lumber company disputes the surety's contention that cost of completion exceeded the amount of the retent. We do not feel it necessary to dispose of any issues of law which might arise should the lumber company prevail in this regard. The extent of the cost of completion is a question which should first be resolved by the trial court.

Reversed and remanded with instructions that summary judgment be set aside and for further proceedings.

BADT and EATHER, JJ., concur.