[No. 33974.    Department Two.    March 7, 1958.]

DAVE LEVINSON *et al.*, *Respondents*, v. C. R. LINDERMAN *et al.*, *Defendants*, UNITED STATES FIDELITY AND GUARANTY COMPANY, *Appellant.*[1]

[1]Reported in 322 P. (2d) 863.

*Lester T. Parker* and *Ralph E. Franklin,* for appellant.

*Zelasko & Zelasko,* for respondents *Levinson et al.*

*Nordquist & Schnatterly,* for respondent National Bank of Commerce of Seattle.

FOSTER, J.—The United States Fidelity and Guaranty Company appeals from a judgment subordinating its claim to moneys in the court's registry, representing the final payment on school construction contracts, to the claims of respondent Victor Osina Company, a judgment creditor, and respondent The National Bank of Commerce of Seattle, a contract creditor, whose assignment caveat was filed in the office of the secretary of state.

On March 22, 1953, the Grays Harbor county consolidated school district No. 97 executed separate contracts for the construction of a school building and teachers' cottage with the L. & L. Construction Company, a partnership. On the same day, the contractor filed separate statutory performance bonds (RCW 39.08.010), on which the United States Fidelity and Guaranty Company was surety. Thereafter, the contractor started the construction.

On July 29, 1953, respondent The National Bank of Commerce of Seattle filed in the office of the secretary of state a statutory notice (RCW 63.16.020) that the contractor intended to assign accounts receivable to it. On April 19, 1954, the bank loaned the contractor fifteen thousand dollars upon its promissory note, secured by an assignment of a single progress payment. Neither the school district nor the surety was advised of the assignment. The note remains unpaid.

On July 7, 1954, the school board's architect advised the board that the contractor had breached its contract in four particulars. On the following day, July 8, 1954, the school board, by resolution, found the contractor in default in the particulars specified by the architect and gave the contractor written notice thereof, and, at the expiration of the contractual ten-day grace period, demanded the completion

of the buildings by the surety under its bond, which it did at a cost of $89,159.70.

The application for the performance bond provides, among other things, that, in case of the default of the contractor, the surety shall have the right to complete the contract at the expense of the principal.

The supplemental special conditions of the contract[2] require the contractor to furnish proof of payment of all bills before final payment; otherwise, the school district may itself pay the bills. Both construction contracts, which are in identical form, provide, in the event of the contractor's default, the school district may itself complete the work or employ others to do it, and take and use the contractor's equipment and materials for that purpose, in which event no further money shall be due the contractor unless a surplus exists after payment of all expenses.[3]

Respondents Dave Levinson and Victor Osina, doing business as the Victor Osina Company, obtained a judgment

---

[2]The supplemental special conditions provide as follows:

" . . . The Contractor shall furnish satisfactory evidence that all obligations of the nature hereinabove designated have been paid, discharged, or waived. If the Contractor fails so to do, then the Owner may, after having served written notice on the said Contractor, either pay unpaid bills, of which the Owner has written notice, direct, or withhold from the Contractor's unpaid compensation a sum of money deemed reasonably sufficient to pay any and all such lawful claims until satisfactory evidence is furnished that all liabilities have been fully discharged, . . ." Supplemental Special Conditions 5, § 12 (d).

[3]" . . . the Owner shall also be at liberty to terminate the employment of the Contractor for the said work, and to enter upon the premises and take possession, for the purpose of completing the work comprehended under this contract, of all materials, tools and appliances thereon, and to employ any other person or persons to finish the work, and to provide the materials therefor; and in case of such discontinuance of the employment of the Contractor he shall not be entitled to receive any further payment under this contract until the said work shall be wholly finished, at which time, if the unpaid balance of the amount to be paid under this contract shall exceed the expense incurred by the Owner in finishing the work, such excess shall be paid by the Owner to the Contractor, but if such expense shall exceed such unpaid balance, the Contractor shall pay the difference to the Owner. . . ." Exhibit I, Agreement Between Contractor & Owner for Construction of a Building, p. 2, ¶ 5.

against the contractor for $3,413.54, and thereafter, on October 24, 1955, served a writ of garnishment upon the school district, which answered; but, by stipulation of the parties, the unpaid balance on the construction contracts of $62,-200.29 was deposited in the court's registry and the school district dismissed.

By stipulation of the parties, the court retained sufficient funds in its registry to satisfy the claims of both respondents, but released the balance to the surety.

Briefs were submitted, and, subsequently, the trial court, in a memorandum opinion, determined that the respondents had priority. The court's thesis was that, while the plans and specifications prohibited the assignment to the bank in very specific terms, such were not part of the contract; therefore, having filed its caveat in the office of the secretary of state to accept assignments from the contractor under the accounts receivable act, and because the surety failed to do so, the bank's claim was adjudged superior to that of the surety. The decision is fundamentally erroneous because the act has no application.

The contracts for both the construction of the school building and the teachers' cottage contain the following provision:

"First. The Contractor under the direction and to the satisfaction of Architect Charles A. Baylon, acting under this contract as agent of the said Owner, shall and *will provide all the materials and perform all the work mentioned in the specifications* and shown on the drawings prepared by the said Architect for construction of a Teachers' Cottage at Lake Quinault, Grays Harbor, State of Washington, . . . which drawings and specifications are identified by the signature of the parties hereto." (Italics ours.)

The performance bond itself makes the contract, and the plans and specifications, a part of the bond by reference.

It is beyond cavil that the contractor defaulted in the performance of his contract, because of which the school board terminated the contract and called upon the surety to complete the buildings pursuant to the performance bond, which it did at a very substantial loss.

■■  The general conditions of the contract and the supplemental special conditions contained in the plans and specifications prohibit the assignment in unmistakable terms; but the respondents contend, and the trial court found, that such were not part of the contract. We hold otherwise, and that all the documents were executed simultaneously and are but one contract.

Although there were separate documents, the two contracts, the two performance bonds, and the plans and specifications were all executed at the same time as part of one transaction and constitute a single contract. The bank and the judgment creditor contend that the reference to the plans and specifications in the two contracts is insufficient to make the plans and specifications a part of the contract. We decide otherwise. The applicable rule of law is stated in 17 C. J. S. 714, § 298, as follows:

"As a general rule, sometimes by reason of express statutory provision, where several instruments are made as part of one transaction, they will be read together, and each will be construed with reference to the other. This is true, although the instruments do not in terms refer to each other."

Our decisions are in accord. *Paine-Gallucci, Inc. v. Anderson*, 41 Wn. (2d) 46, 246 P. (2d) 1095; *Standring v. Mooney*, 14 Wn. (2d) 220, 127 P. (2d) 401; *State ex rel. Noble v. Bowlby*, 74 Wash. 54, 132 Pac. 723.

This is not an ordinary contract, but a printed form copyrighted by the American Institute of Architects, designed for the specific purpose of making all documents one contract. The definition is unmistakable:

"(a) The Contract Documents consist of the Agreement, the General Conditions of the Contract, the Drawings and Specifications, including all modifications thereof incorporated in the documents before their execution. These form the Contract."

Under such circumstances, although the documents are physically separate, they constitute a single contract. This conclusion was reached under the identical form of contract in *Valley Constr. Co. v. City of Calistoga*, 72 Cal. App. (2d) 839, 165 P. (2d) 521.

We said in *Young v. Borzone*, 26 Wash. 4, 18, 66 Pac. 135, 421:

"The agreement signed by the parties expressly provides that such plans were to be a part of the contract. So much of the paper drawn up by the city engineer as disclosed these plans and details was admissible as proof of such plans, and, when proven, such plans entered into, and by the express provisions of the agreement signed by the parties became a part of, the contract."

Such is the uniform tenor of judicial decision.[4]

The bank could not fail to know that the contract was for the construction of school buildings and that a performance bond was required by RCW 39.08.010 at the time of the execution of the contract. Inquiry would have shown that the contract prohibited the assignment in question, and that the school district had the right under the contract, in the event of the contractor's default, to complete the buildings and to use all sums unpaid for that purpose.

The applicable rule of law[5] is well stated in *A. Farnell Blair Co. v. Hollywood State Bank*, 102 Cal. App. (2d) 418, 427, 227 P. (2d) 529:

"Assignees of a contractor of funds to be earned in public work take with notice of the terms of the contract and of the undertaking of the contractor's surety. (*New Amsterdam Casualty Co. v. City of Astoria, supra*, 256 F. 560.)"

The assignment is void under *Indemnity Ins. Co. v. Nelson*, 173 Wash. 294, 296, 22 P. (2d) 984, in which we held:

"The contract provides that the contractor shall not,

[4]*American Concrete Steel Co. v. Hart*, 285 Fed. 322; *Gray v. Cotton*, 166 Cal. 130, 134 Pac. 1145; *Howe v. Schmidt*, 151 Cal. 436, 90 Pac. 1056; *Farmers Union Co-operative Elevator Federation v. Carter*, 152 Neb. 266, 40 N. W. (2d) 870; *Thompson v. Jost*, 108 Neb. 778, 189 N. W. 169; *Pittsburgh Plate Glass Co. v. American Surety Co.*, 66 Ga. App. 805, 19 S. E. (2d) 357; *Real Estate Management, Inc. v. Giles* (Tenn. App.), 293 S. W. (2d) 596; *International Milling Co. v. Hachmeister, Inc.*, 380 Pa. 407, 110 A. (2d) 186; *Neville v. Scott*, 182 Pa. Super. Ct. 448, 127 A. (2d) 755; *State for Use of National Surety Corp. v. Malvaney*, 221 Miss. 190, 72 So. (2d) 424, 43 A. L. R. (2d) 1212.

[5]*Standard Acc. Ins. Co. v. Federal Nat. Bank*, 112 F. (2d) 692; *Maryland Cas. Co. v. Dulaney Lbr. Co.*, 23 F. (2d) 378; *Derby v. United States Fidelity & Guaranty Co.*, 87 Ore. 34, 169 Pac. 500.

either legally or equitably, assign any of the moneys payable under the contract, or his claims thereto, unless with the consent of the city. This is a plain, important provision of the contract, which was known to Fuller & Co. when it took the assignment. To permit Fuller & Co. to recover its so-called superior or preferred claim of $2,045, nearly equal to the total amount of the contract price, would render nugatory the specific prohibition in the contract against the assignment of moneys due under it; thus necessarily, though indirectly, resulting to the detriment of a contract upon which there is a surety, as required by statute, for the performance of a contract which specifically provides against assignment of moneys due under the contract."

The supreme court of Connecticut recently passed upon the same issue and held in *Lewin & Sons v. Herman*, 143 Conn. 146, 120 A. (2d) 423, as follows:

"We first take up the question whether the attempted assignment by Hubler to the plaintiff was effective. Hubler had agreed in his contract with Herman that he would not assign any money due or to become due under the contract without Herman's consent. Such a provision is valid. 6 C. J. S. 1128. Herman refused to sign the proffered assignment, and that refusal rendered the assignment abortive."

█ The funds distributed by the judgment belong to the surety and not to the contractor, and, therefore, the bank acquired nothing by the assignment because the contractor had nothing to assign. *Commercial Bank in Panama City v. Board of Public Instruction*, 55 So. (2d) 552; *Levy v. Jacobs*, 3 Misc. (2d) 994, 148 N. Y. S. (2d) 507; *Lynip v. Alturas School Dist.*, 24 Cal. App. 426, 141 Pac. 835. It is stated in 6 C. J. S. 1139, 1141, § 84 (2d) as follows:

"An assignment of a sum of money due or to become due will pass to the assignee only so much as a construction of the instrument shows was intended to pass; and the assignee may take nothing where the assignor of money due or to become due under a contract which he must perform defaults without anything due or owing."

The bank's claim is founded upon its statutory notice (RCW chapter 63.16) filed in the office of the secretary of state and the subsequent assignment of estimate No. 12. We find no room for application of this statute. The pur-

pose of such act is explained in the materials collected in the margin.[6]

■ There is another compelling reason for reversal. This is not a case of priorities between assignees under separate assignments of money belonging to the contractor, for the surety completed the buildings at a cost of $89,-159.70, with only $62,200.29 remaining unpaid on the contract, and the deposited funds belong to the surety by right of subrogation.

The school district had the right to complete the work in any way it chose and to use the unpaid balance therefor. When the surety completed the construction, it was subrogated to the rights of the school district to the unpaid balance, and all of the funds in the court's registry belong to it.

The law is summarized in 21 R. C. L. 1113, § 149, as follows:

"It is a well settled doctrine that, where the sureties on a contractor's bond complete the contract on his abandonment of it, they stand in the position of the owner of the property to which the contract relates, to the extent at least that they are entitled to sufficient of the money to be paid on the contract to save themselves from loss on their contract of suretyship, and the contractor cannot make a valid contract, by assignment or otherwise, the effect of which is to deprive the sureties of this right."[7]

---

[6]For a discussion of the purpose of the accounts receivable act, see: Assignments of Accounts Receivable Under Public Law 461, 1 Catholic University of America L. Rev. 136; New Legislation Affecting Non-Notification Financing of Accounts Receivable, 44 Mich. L. Rev. 563; Assignments of Accounts Receivable—A Comment on Recent Iowa Legislation, 6 Drake L. Rev. 25; Accounts Receivable Legislation, 12 Ohio St. L. Jour. 333; and *Costello v. Bank of America Nat. Trust & Savings Ass'n*, 246 F. (2d) 807.

[7]This view is supported by the overwhelming weight of the decided cases. *Globe Indemnity Co. v. Peterson-McCaslin Lbr. Co.* (Nev.), 303 P. (2d) 414; *United States Fidelity & Guaranty Co. v. Triborough Bridge Authority*, 297 N. Y. 31, 74 N. E. (2d) 226; *Grubbs v. Slater* (Ky. App.), 266 S. W. (2d) 85; *Wasco County v. New England Equitable Ins. Co.*, 88 Ore. 465, 172 Pac. 126; *Travellers' Ins. Co. v. Board of Education*, 194 N. C. 430, 140 S. E. 31; *Citizens' Bank of Guntersville v. Pearson*, 217 Ala. 391, 116 So. 350; *State ex rel. Southern Surety Co. v. Schlesinger*, 114 Ohio St. 323, 151 N. E. 177, 45 A. L. R. 371; *Hardin County Sav. Bank*

This state is in accord, for in *Fidelity & Deposit Co. v. Northwestern Nat. Bank of Bellingham*, 90 Wash. 179, 183, 155 Pac. 743, we held:

"The surety company, as surety for the subcontractor, took over the work, paid a large amount of money upon outstanding claims for work and material furnished, and then sublet the contract to the original contractor; and the original contractor thereupon finished the work. The money which was subsequently paid into the court came as a result of the surety company finishing the contract. Under these circumstances, it seems plain that the surety company is entitled to the money which it afterwards earned in the performance of that uncompleted work."

and, again, at page 185:

"We are satisfied, therefore, that the moneys earned by the surety company and by Mr. Sauset in the completion of the work, which was paid into court, were rightfully ordered by the trial court to be paid to the surety and Mr. Sauset in preference to the bank."

This conclusion is reinforced by *Colusa-Glenn Production Credit Ass'n v. Phoenix Ins. Co.*, 145 F. Supp. 844, 847 (1956), in which it was held that the surety's right to subrogation was even superior to the Federal tax lien because the funds belong not to the contractor, but to the surety by right of subrogation. The court's language is:

"The surety's claim to the withheld funds is a question entirely apart from the issue of priorities, of course. It rests upon the doctrine of equitable subrogation that where a surety performs under a performance bond after the default of the contractor, it is entitled to an equitable lien on funds previously withheld by reason of the contractor's default, at least to the extent of the surety's expenses. See *Lacy v. Maryland Casualty Co.*, 4 Cir., 1929, 32 F. 2d 48 (see especially the discussion on pages 51-53); *Farmers'*

---

*v. United States*, 65 F. Supp. 1017; *W. H. Putegnat Co. v. Fidelity & Deposit Co. of Maryland* (Tex. Comm. App.), 29 S. W. (2d) 1004; *Winter v. Hazen-Latimer Co.*, 42 App. Cases, D. C. 469; *In re Poisson* [*Travellers' Ins. Co. v. Board of Education*], 194 N. C. 430, 140 S. E. 31, 33; *Danais v. De Matteo Constr. Co.*, 102 F. Supp. 874; *American Employers Ins. Co. v. School Dist. of Newport*, 99 N. H. 188, 107 A. (2d) 684; *Title Guaranty & Surety Co. v. Dutcher*, 203 Fed. 167.

*Bank v. Hayes*, 6 Cir., 1932, 58 F. 2d 34; *American Fidelity Co. v. Delaney*, D. C. Vt. 1953, 114 F. Supp. 702, at page 711; *United States Fidelity & Guaranty Co. v. U. S., supra*, 201 F. 2d at page 122."

The facts in *Scarsdale Nat. Bank & Trust Co. v. United States Fidelity & Guaranty Co.*, 264 N. Y. 159, 163, 190 N. E. 330 (1934), are so similar that we approve the following passage from the opinion of the New York court of appeals as expressing our view of the applicable rule of law:

"The bonding company succeeded to all these rights of the State, under the principle of subrogation. Having completed the work in behalf of the State, it was subrogated to all the rights of the State as against the contractor. This was not a right given to it by the judgment of the court, or arising at the time of the default. It was implicit in its undertaking and agreement with the State. This equitable right of subrogation was created on December 8, 1930, at the time the defendant executed its bond as surety to the State months before the assignment to the bank. The bond was linked up to the contractor's contract. The performance, which was guaranteed, was the performance of this contract, which had in it the right of the State to apply earned moneys toward completion. Probably the same rights would have existed if article XXII, above quoted, had not been in the contract. However, we are here dealing with the contract which contained the right to retain earned moneys and apply them on the cost of any completed work. To all rights under this contract the bonding company was subrogated. The equity in favor of the surety company *arose* at the time of the giving of its bond. The right *became available* when the surety company completed the work at a loss."

The judgment must be reversed because the assignment was prohibited by contract and is, therefore, void, and the funds involved are those of the surety by right of subrogation. Upon the contractor's default, the school district had the right to apply the entire unpaid balance to the completion of the construction, and the surety on the performance bond completing the contract is subrogated to all its rights.

The judgment of respondent Osina under the writ of garnishment falls for the same reason, for at the time of

the service of the writ, October 24, 1955, more than a year after the contractor's default and the completion of the work by the surety, the school district was not indebted to the contractor; hence, the respondent Osina obtained nothing by the garnishment.

The cause is remanded with directions to enter judgment in favor of appellant United States Fidelity and Guaranty Company for the funds in the court's registry.

HILL, C. J., DONWORTH, and ROSELLINI, JJ., concur.

HILL, C. J. (concurring specially)—I have signed the opinion in this case, but desire to add an explanatory note to account for the delay in its filing—the appeal having been heard by this court on June 10, 1957. Supplemental authorities were filed thereafter, and the answer to the supplemental authorities was filed October 25, 1957. The case was originally assigned to Judge E. W. Schwellenbach. After his death, it was reassigned to Judge Harry Ellsworth Foster, the author of the present opinion.