[No. 36676. Department One. January 30, 1964.]

GUTHRIE INVESTMENTS, INC., *Respondent,* v. CARL BENNETT *et al., Appellants.*\*

*J. Orville Humphries*, for appellants.

*William G. Ennis*, for respondent.

ROSELLINI, J.—On June 17, 1958, one Russell B. Owens, doing business as Russ Owens Plumbing & Heating Service, hereafter referred to as Owens, entered into a contract with Burl Johnson and Associates, a partnership, by the terms of which Owens as a subcontractor agreed to do certain

\*Reported in 388 P. (2d) 955.

plumbing work required under a housing contract with the federal government. The Owens contract price was payable in monthly estimates with 10 per cent of each estimate to be retained by Burl Johnson and Associates until completion of the work to its satisfaction. Burl Johnson and Associates reserved the privilege of paying materialmen and laborers directly if, in its opinion, there was cause for such action.

For the purpose of financing the work under this subcontract, Owens established a line of credit with the First National Bank in Spokane, and pursuant thereto the bank advanced money from time to time to Owens. Repayment of the loans was guaranteed by the respondent. As security, Owens assigned all proceeds and earnings under his subcontract. This assignment was accepted by Burl Johnson and Associates on July 3, 1958. At this time, there was on file in the office of the Secretary of State an effective Notice of Assignment of Accounts Receivable, duly executed by Owens.

Owens failed to repay all of the money advanced by the bank, and the respondent was required to pay to the bank the total sum of $41,106.80. It recovered a judgment against Owens for this amount.

In the meantime, on August 4, 1958, the appellant Carl Bennett became the surety for Owens on a payment and performance bond agreement in favor of Burl Johnson and Associates. On August 14, 1959, Owens defaulted on his subcontract. At this time, Burl Johnson and Associates had in its possession the sum of $59,223.17, this sum having been earned by Owens and retained by Burl Johnson and Associates as provided by their agreement. Burl Johnson and Associates called upon the appellant Carl Bennett to complete the Owens subcontract; but he declined to do so and required Burl Johnson and Associates to complete the work and charge the expense for accumulated bills and completion work against the retained fund. This use of the fund exhausted it so that the respondent could not recover from it the sum advanced under its guaranty agreement.

Thereafter the respondent brought this action alleging that the appellant had been unjustly enriched when Burl Johnson and Associates paid completion costs out of the retained fund to which the respondent had a prior claim. The trial court held that, while Burl Johnson and Associates had a right under its contract with Owens to pay these costs directly, as between the respondent and appellants, the respondent's right to reimbursement from the retained fund took precedence over any right of the appellants to have the costs of completion paid from the fund.

The appellants contend that the trial court erred in so holding. They rely upon the cases of *United States Fidelity & Guar. Co. v. Montesano,* 160 Wash. 565, 295 Pac. 934, and *Levinson v. Linderman,* 51 Wn. (2d) 855, 322 P. (2d) 863. In the first of these cited cases, a contract to construct a bridge for the city of Montesano provided for the retention of 15 per cent of the amount earned for a period of 30 days following the completion and acceptance of the entire work by the city. This was in accordance with Rem. Comp. Stat., § 10320, which required that such a percentage be retained, and which gave to labor and materialmen a lien on the fund. We held that the surety who was required to pay claims of labor and materialmen was subrogated to their rights in the retained fund. There is no statutory lien involved in this case.

In the case of *Levinson v. Linderman, supra,* a school construction contract provided that the proceeds could not be assigned without the consent of the school district. When the contractor defaulted, the surety completed the contract. In an action to determine rights to moneys which the school district deposited in court, an assignee or a single progress payment contended that it was entitled to earned funds which had been in the hands of the school district at the time of the default. This court held that the assignment, having been given without the consent of the school district, was void. In this case, there was no restriction on the right to assign and the contractee consented to the assignment of Owens' earnings under the contract. The *Levinson* case,

therefore, does not provide the answer to the question presented here.

The applicable rule is found in *Northwestern Nat. Bank of Bellingham v. Guardian Cas. & Guar. Co.*, 93 Wash. 635, 161 Pac. 473. In that case a bank took from a contractor on public works, prior to notice of nonpayment for labor and materials, assignments of all moneys to become due to the contractor as security for advances to the contractor. The contract contained no provision for a reserve of any percentage as security for labor and material claims but merely permitted the city to withhold payment until satisfied that all labor and material claims had been paid. This court held that the assignments were valid appropriations of the balance due upon the contract, paid into court by the city upon completion of the work, and were prior and superior to any rights of laborers and materialmen, and hence superior to any right of subrogation in the surety on the contractor's bond. After quoting language from *Maryland Cas. Co. v. Washington Nat. Bank*, 92 Wash. 497, 159 Pac. 689, we said:

" . . . This is a distinct holding that it is only where there is a clear and express reservation in the contract of a fund to be held up for the benefit of laborers and materialmen that there is any fund the contractor may not effectually assign by an assignment made prior to his default and notice of such default to the board or, as in this case, to the city, and that it is only as to such reserve fund that the labor and material claims have any priority over such assignments, hence only as to such reserve funds that there is any right of subrogation in favor of the bondsmen. . . ."

In that case, as in this, the contractee reserved the right to pay laborers and materialmen direct, but there was no provision for the withholding of part of the earned amount for the express purpose of paying them. It is true that in this case the contract unlike that involved in the *Northwestern Nat. Bank* case, *supra,* provided for the retention of a percentage of the earnings, but it was retained for the protection of the contractee, not the laborers and materialmen, and therefore the same rule is applicable:

Under their suretyship undertaking, the appellants were obliged to pay the laborers and materialmen if Owens did not do so; and the assignment of earnings held by the respondent was not subject to the claims of such creditors.

In the case of *Hall & Olswang v. Aetna Cas. & Surety Co.,* 161 Wash. 38, 296 Pac. 162, a contract for public works provided that the contractee might retain payments in excess of the 15 per cent reserve fund required by statute for the protection of labor and material claimants. The contractor assigned to a bank all sums to fall due on the contract and notified the contractee shortly after commencement of the work. This court held that the assignment was superior to a prior assignment by way of indemnity to a surety, conditioned upon the contractor's default, which assignment was not brought to the knowledge of the district until after substantial completion of the building, when default first became known.

In regard to a claim on the part of the surety that it was subrogated to rights of labor and material claimants in reserved payments in excess of the 15 per cent reserve required by law for their benefit, we held that they had no such rights, and therefore there could be no subrogation.

We have consistently adhered to this view. In *Beyer v. Zindorf,* 116 Wash. 199, 198 Pac. 977, for example, we held that under a contract between the state and a contractor for the construction of a highway pursuant to Rem. Code §§ 5867-5878, which did not authorize the retention of a percentage of the contract price for the protection of those supplying labor and material, no trust fund was created in favor of the latter by the provisions of the contract to the effect that part of the price earned might be retained to be applied by the state at its discretion upon any claims due and unpaid.

We conclude that the trial court was correct in holding that the claim of the respondent assignee to the reserve fund retained by Burl Johnson and Associates out of earnings accumulated prior to the default was superior to that of the appellants, whose duty it was to pay the laborers

and materialmen and who had no right to require that the fund be applied to the payment of such claims.

Other assignments of error have been made. We have examined these assignments and the frugal arguments advanced in support of them, and have found that they are likewise without merit. It would serve no useful purpose to set them forth here.

The judgment is affirmed.

OTT, C. J., HILL, HUNTER, and HALE, JJ., concur.

April 6, 1964. Petition for rehearing denied.